# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| WACHOVIA SECURITIES, LLC, a Delaware Corporation and successor in interest to A.G. EDWARDS & SONS, INC., <br><br>        Plaintiff, <br><br>       v. <br><br> FRANK J. BRAND, II, MARVIN SLAUGHTER, STEPHEN N. JONES, AND GEORGE W. STUKES, individuals, <br><br>       Defendants. | CIVIL ACTION NO. 08-02349-TLW |

### PLAINTIFF WACHOVIA SECURITIES, LLC'S MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION TO VACATE ARBITRATION AWARD AND IN OPPOSITION TO DEFENDANTS' MOTION TO CONFIRM  AWARD

Dated:  January 15, 2010

**ROBINSON, BRADSHAW & HINSON, P.A.**
**140 East Main Street, Suite 420**
**Rock Hill, South Carolina 29730**
**(803) 325-2900**

**MCANGUS GOUDELOCK & CURRIE, LLC**
**700 Gervais Street, Suite 300**
**Columbia, South Carolina  29211**
**(803) 779-2300**

**PADUANO & WEINTRAUB LLP**
**1251 Avenue of the Americas**
**Ninth Floor**
**New York, New York 10020**
**(212) 785-9100**

**Attorneys for Plaintiff**
**Wachovia Securities, LLC**
**n/k/a Wells Fargo Advisors, LLC**

# TABLE OF CONTENTS

TABLE OF CONTENTS..................................................................................ii

I.   INTRODUCTION ................................................................................. 1

II.  STATEMENT OF FACTS ..................................................................... 5

III.     ARGUMENT .................................................................................... 8

   A.   The Panel's fee award to Defendants under the FCPA must be vacated............. 10

      1.   The Panel exceeded its authority by acting under the FCPA, which does not apply to arbitration proceedings.......................................................... 10

      2.   In making a fee award under the FCPA, the Panel exceeded its authority by claiming for itself this Court's exclusive power to sanction parties for their conduct in judicial proceedings.......................................................... 12

      3.   Even if the Panel had authority to sanction Wachovia under the FCPA, the Panel exceeded its authority and manifestly disregarded the law by ignoring the Act's clear and unmistakable conditions precedent to an award of sanctions—including notice and an opportunity to be heard. .......................... 13

      4.   The Panel's failure to respect the procedural safeguards contained in the FCPA deprived Wachovia of a fundamentally fair hearing on the issue of whether Defendants should be awarded fees under the Act. ........................... 15

      5.   Wachovia was prepared to submit extensive evidence demonstrating that neither it nor its counsel had committed conduct sanctionable under the FCPA............................................................................................ 17

   B.   The Panel's fee award to Defendants under the Wage Act must be vacated. ....... 18

      1.   The Wage Act did not apply to Defendants' counterclaims............................. 19

      2.   The Panel manifestly disregarded the law's requirement that any attorney's fee award be "reasonable." ................................................................... 20

      3.   The Panel denied Wachovia a full and fair hearing by preventing it from even reviewing (much less rebutting) the legal bills and invoices submitted by Defendants in support of their claim for attorneys' fees and expenses. ........... 22

III.   NO EVIDENCE EXISTS IN SUPPORT OF DEFENDANTS' CLAIM THAT WACHOVIA SHOULD BE "HELD ACCOUNTABLE" FOR ITS MISREPRESENTATIONS........................................................................ 23

   A.   Defendants have failed to identify the alleged "misrepresentations" for which they believe Wachovia should be "held accountable.".......................................... 23

**B.    Wachovia's independent review of the DVD that it submitted to the Court has yielded evidence of one misstatement made by its counsel, which was not material in light of the other, undisputed evidence on which the Court based its order for limited injunctive relief.** ........................................................................ 24

**IV.    CONCLUSION** ........................................................................ 28

## TABLE OF AUTHORITIES

**<u>Cases</u>**

*Adamson v. Marianne Fabrics, Inc.,* 301 S.C. 204, 206, 391 S.E.2d 249, 250 (1990) .......... 19

*Am. Fed. Bank, FSB v. No. One Main Joint Venture*, 321 S.C. 169, 175, 467 S.E.2d 439, 442-43 (1996) ................................................................................................................ 21

*Apex Plumbing Supply, Inc. v. U.S. Supply Co., Inc.,* 142 F.3d 188, 193 n. 5 (4th Cir. 1998) ...................................................................................................... 8

*Bowles Financial Group, Inc. v. Stifel, Nicolaus & Co., Inc.,* 22 F.3d 1010, 1013 (10th Cir. 1994) ............................................................................................... 16

*Citizens for Lee County, Inc. v. Lee County*, 308 S.C. 23, 416 S.E.2d 644 (1992) ................ 11

*Comedy Club, Inc. v. Improv West Assocs.,* 553 F.3d 1277, 1290 (9th Cir. 2009) ................. 9

*Dowability v. Chambless,* 344 S.C. 558, 561-62, 544 S.E.2d 646, 648 (Ct. App. 2001) ........ 11

*Father v. S.C. Dep't of Soc. Svcs.,* 353 S.C. 254, 259, 578 S.E.2d 11, 13-14 (2003) ............. 11

*Father v. S.C. Dept. of Social Svcs.*, 345 S.C. 57, 67, 545 S.E.2d 523, 528 (Ct. App. 2001) ........................................................................................... 10, 13

*First Bk. of Marietta v. Hartford Underwriters Ins. Co.,* 307 F.3d 501, 529 (6th Cir. 2002) ..................................................................................................... 12

*Gas Aggregation Services, Inc. v. Howard Avista Energy, LLC*, 319 F.3d 1060 (8th Cir. 2003) ....................................................................................................... 11

*Hall Street Associates v. , L.L.C. v. Mattel, Inc.,* 128 S.Ct. 1396, 1404 (2008) ....................... 8

*Hanahan v. Simpson*, 326 S.C. 140, 157, 485 S.E.2d 903, 912 (1997) .................................. 17

*Hanna v. Plumer,* 380 U.S. 460, 464 (1965) ......................................................................... 12

*Healey v. Labgold*, 271 F. Supp. 2d 303, 305 (D.D.C. 2003) ................................................ 12

*Hood ex rel. Mississippi v. City of Memphis, Tenn.*, 570 F.3d 625, 628 (5th Cir. 2009) .......... 5

*Hoteles Condado Beach v. Union De Tronquistas*, 763 F.2d 34, 38-40 (1st Cir. 1985) ......... 16

*Hutchins v. Cardiac Science, Inc.,* 456 F. Supp. 2d 173, 194 (D. Mass. 2006) ..................... 12

*Int'l Union, United Mine Workers of America v. Marrowbone Dev. Co.,* 232 F.3d 383, 388 (4th Cir. 2000) ........................................................................................ 1, 15

*Jackson v. Speed*, 326 S.C. 289, 308, 486 S.E.2d 750, 760 (1997) ....................................... 20

*Laser Supply & Services, Inc. v. Orchard Park Assoc.,* 382 S.C. 326, 342, 676 S.E.2d 139, 148 (Ct. App. 2009) ........................................................................................ 20

*Long John Silver's Restaurants, Inc. v. Cole*, 514 F.3d 345, 349 (4th Cir. 2008) ................. 10

*Martin v. South Carolina Dep't of Corrections*, 350 S.C. 196, 197, 565 S.E.2d 756, 757 (2001) .......................................................................................................... 10

*Matthews v. City of Greenwood*, 305 S.C. 267, 271-72, 407 S.E.2d 668, 670 (Ct. App. 1991) ................................................................................................ 19

*Patten v. Signator Ins. Agency, Inc.,* 441 F.3d 230, 235 (4th Cir. 2006) ........................... 1, 10

*Rich v. Walsh*, 357 S.C. 64, 73 n.3, 590 S.E. 2d at 506, 510 (Ct. App. 2003) ...................... 13

*Riko Enterprises, Inc. v. Seattle Supersonics Corp.,* 357 F. Supp. 521 (S.D.N.Y. 1973) ....... 11

*Stolt-Nielsen SA v. AnimalFeeds Int'l Corp.,* 548 F.3d 85, 94 (2d Cir. 2008) ........................ 8

*Sunrise Sav. & Loan Ass'n v. Mariner's Cay Dev. Corp.,* 295 S.C. 208, 211 367 S.E.2d 696, 698 (1988) ........................................................................................ 20

*Teamsters v. E.D. Clapp Corp.,* 551 F. Supp. 570, 578 (N.D.N.Y. 1982), *aff'd* 742 F.2d 1441 (2d Cir.1982) ...................................................................................... 16

*Three S Delaware, Inc. v. DataQuick Info. Sys., Inc.,* 492 F.3d 520, 531 (4th Cir. 2007) ...... 15

*Utilities Construction Co., Inc. v. Wilson*, 321 S.C. 244, 468 S.E.2d 1 (Ct. App. 1996) .. 20, 21

## Statutes

9 U.S.C. § 10 ............................................................................................................ 8
9 U.S.C. § 10(a)(4) ................................................................................................... 9
S.C. Code § 41-10-10 ............................................................................................... 19
S.C. Code Ann. § 15-36-10 .......................................................... 10, 13, 14, 17, 20
S.C. Code Ann. § 41-10-80 ....................................................................................... 18

## Rules

Fed. R. Civ. P. 11 ............................................................................................... 12, 24

Plaintiff Wachovia Securities, LLC ("Wachovia"), now known as Wells Fargo Advisors, LLC, submits this memorandum in support of its motion to vacate the award entered in the arbitration proceeding related to this action (the "Award") and in opposition to Defendants' motion to confirm the Award.

## I.    INTRODUCTION

"[A]lthough the authority of an arbitrator is broad, and subject to great deference under the applicable standard of review, it is not unlimited." *Patten v. Signator Ins. Agency, Inc.,* 441 F.3d 230, 235 (4th Cir. 2006) (internal quotations omitted).   Indeed, "courts owe no deference to an arbitrator who has failed to provide the parties with a full and fair hearing." *Int'l Union, United Mine Workers of America v. Marrowbone Dev. Co.,* 232 F.3d 383, 388 (4th Cir. 2000).   Nor are arbitrators permitted to exceed their authority by manifestly disregarding the law.    To guard against such excesses, the Federal Arbitration Act (the "FAA") gives the federal courts express authority to vacate arbitration awards when the arbitrators deprive a party of a full and fair hearing on an issue, exceed their authority, or manifestly disregard the law.  The arbitration panel in this case did that here, when it awarded $1.1 million in attorneys' fees and expenses to Defendants under two statutes that did not apply, without requiring the necessary evidentiary support from Defendants, and denying Wachovia's express request to rebut the fee claim.

Notably, Wachovia does *not* seek the *vacatur* of—though it does vigorously disagree with—those portions of the Award that denied all of Wachovia's own substantial claims. Instead, Wachovia asks this Court to vacate the Panel's decision to award Defendants $1.1 million in attorneys' fees and expenses when it had neither a factual nor a legal basis for doing so.  Wachovia also seeks the vacation of the Panel's award of $15,000 in damages to

Defendants on their counterlclaims under the South Carolina Wage Payment Act (the "Wage Act").

The Panel based its fee award on two South Carolina statutes: the South Carolina Frivolous Civil Proceedings Act, S.C. Code Ann. § 15-36-10, *et seq*. (the "FCPA"), and the Wage Act. The Panel principally relied on the FCPA, for as Defendants' counsel conceded at closing argument, Defendants' fees and expenses were incurred "principally defending" against Wachovia's own claims—not in prosecuting Defendants' Wage Act counterclaims. The FCPA, however, does not apply to arbitration proceedings and cannot support the Panel's fee award. Nor did the Panel have the power to sanction Wachovia under the FCPA for conduct occurring in this Court (which, its Award indicates, is what it was attempting to do).

Even if the Panel had had authority to act under the FCPA, Defendants' claim for sanctions under the Act was raised for the very first time on the last day of the arbitration hearing and in a manner completely inconsistent with the FCPA. The Panel ignored the FCPA's express statutory guarantee for notice and an opportunity to be heard—rejecting Wachovia's plea for such an opportunity to respond to Defendants' belated and last-minute FCPA claim. The Panel's subsequent grant to the Defendants of $1,111,553.85 million in fees and expenses (representing almost 99 percent of the Panel's total Award) was, therefore, based on law that did not apply and facts on which Wachovia had not been given any opportunity to be heard. Consequently, the Panel's award of fees and expenses under the FCPA must be vacated.

To the extent that the Panel intended to make an independent award of fees and expenses to the Defendants based on the Wage Act alone, that portion of the Award must be vacated as well, for several reasons. First, the Wage Act was inapplicable. The basis for

2

Defendants' Counterclaims was not "wages" owed them by Wachovia, but reimbursements for loan proceeds that, Defendants contended, they had overpaid. The arbitrators manifestly disregarded the law and exceeded their authority by treating a dispute over the repayment of a loan as a wage dispute cognizable under the Wage Act. Second, even if the Wage Act had applied, the Panel disregarded the law by awarding Defendants *all* of the fees and expenses that they sought. Under South Carolina law, a party can recover only those attorneys' fees that are authorized by contract or by statute. If a party incurs some of its fees in connection with a statute that authorizes a fee award, and other fees in connection with legal activity for which fees cannot be recovered, the court must carefully analyze and apportion the fees (using a well-established six-factor test) so that only the former are awarded. The Panel did not have the factual record necessary to undertake that analysis, however, and it completed no such analysis before making a fee award—in clear disregard of governing law. Wachovia was prevented from even participating in the Panel's consideration of these issues because the Panel did not permit Wachovia to review the legal bills and invoices that detailed the fees and expenses that Defendants were seeking. In the absence of any findings or conclusions from the Panel indicating what portion of Defendants' $1.1 million fee award was "reasonable" (under South Carolina's six-factor test) and allocable to Defendants' Wage Act counterclaims, an independent award of fees and expenses under the Wage Act cannot be justified.

* * * * *

In addition to denying Wachovia's claims, awarding the Defendants $15,000 in actual damages on their counterclaims under the Wage Act, and awarding the Defendants over $1 million in attorneys' fees and expenses, the Panel also directed the parties to advise this Court

that:  (i) the Declarations filed with this Court in support of Wachovia's application for injunctive relief "may" contain material misrepresentations; (ii) statements made to the Court by Wachovia's counsel at the hearing on such application "may" not be consistent with what is shown on a videotape tendered to the Court at that hearing; (iii) the videotape does not support the allegations made in Court; and (iv) the Panel recommends that the Court dismiss the temporary injunction in its entirety.  The Panel made these very serious charges against Wachovia and its counsel in a remarkably vague and cavalier way, failing to identify any particular alleged representations and noting only that such representations "may" be false or inconsistent with what is shown on videotape.

The vagueness of this portion of the Panel's Award makes it very difficult for Wachovia and its counsel even to identify the Panel's particular concerns, much less to defend itself against them.  But in an effort to do so, Wachovia's counsel Kathryn L. Bedke (who argued in support of Wachovia's application for injunctive relief) has submitted an Affidavit in support of Wachovia's position.[1]  As she explains in that Affidavit, all of the statements that she made to the Court at the subject hearing were made honestly and in good faith. Admittedly, Ms. Bedke's argument to the Court contained a single factual representation that Ms. Bedke later learned was not accurate—that the DVD submitted to the Court showed that the Defendants had "taken documents over" from Wachovia's Florence office into a local office of Wachovia's competitor.  (The DVD showed certain Defendants taking boxes "out of" Wachovia's office, but not "over" to its competitor's office.)  This inaccuracy was the result of a misunderstanding  between Ms. Bedke and Mr. Gerard Brown, the private investigator who conducted the surveillance of the Defendants.  In her Affidavit, Ms. Bedke

---

[1]     Ms. Bedke's Affidavit is included as Attachment A to this Memorandum.

4

apologizes for that. But Ms. Bedke's inaccurate statement was not at all material in light of the Defendants' subsequent admissions at the arbitration that they did, in fact, take handwritten notes and thumb drives containing nonpublic client information from Wachovia to Stifel. Thus, ample evidence existed to show that Wachovia was entitled to the Court's ruling that "what belongs to Wachovia is to be given back to Wachovia[.]" *Transcript of June 27, 2008 Hearing,* at pp. 68-69.[2]

## II.    STATEMENT OF FACTS

Wachovia commenced this action for temporary injunctive relief, together with a parallel arbitration proceeding (the "Arbitration"), against Defendants Frank J. Brand, II; George Stukes; Stephen N. Jones; and Marvin Slaughter on June 27, 2008. In these proceedings, Wachovia claimed that Defendants had violated their contractual and common law obligations to Wachovia in the manner in which they left the firm and joined Stifel, Nicolaus & Company ("Stifel"), a competitor to Wachovia.[3] Following the Court's issuance

---

[2]    Cited excerpts from the June 27, 2008 hearing are collected as Attachment B to this Memorandum.

[3]    Defendants seek to join Stifel as a party to this action under Fed. R. Civ. P. 19 (joinder of necessary parties) or 20 (permissive joinder of parties). Defendants' request should be denied because they have not even attempted to meet their burden to prove that joinder is appropriate. *E.g.,* Hood ex rel. Mississippi v. City of Memphis, Tenn., 570 F.3d 625, 628 (5th Cir. 2009) (the party advocating joinder has the initial burden of demonstrating that a missing party is necessary). Even if this burden had been met, joinder is inappropriate here because it would destroy diversity jurisdiction. (As Defendants have acknowledged in their motion, Stifel and Wachovia both have their principal places of business in Missouri.) Rule 19 permits joinder only of a party "who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction[.]" Fed. R. Civ. P. Rule 19(a)(1). The same impediment bars joinder under Fed. R. Civ. P. 20. *See, e.g.,* Rohrer v. Freudenberg Bldg. Sytems, Inc., 1992 WL 88622, at *1 (W.D. Va. March 9, 1992) (denying motion to join because joinder would destroy diversity).

of a preliminary injunction, the parties, including Stifel, proceeded to arbitration pursuant to the rules of the Financial Industry Regulatory Authority ("FINRA").

The Arbitration lasted for 63 hearing sessions, plus two sessions for closing arguments. *Paduano Aff.*,[4] at ¶ 3. On the penultimate hearing date (October 22, 2009), the Panel directed the parties to submit their unredacted fee bills to the Panel and to exchange with each other only the total amount of fees that they had incurred. *Id.* The Panel stated that the parties would not be given copies of one another's unredacted bills. *Id.* It also directed the parties to submit memoranda discussing whether a fee award was permitted under South Carolina law. *Id.*

On the last day of the Arbitration (November 24, 2009), after the parties' cases-in-chief had concluded and minutes before closing arguments, the parties submitted to the Panel their memoranda of law regarding attorneys' fees. *Paduano Aff.,* at ¶ 4. Upon reviewing Defendants' memorandum, Wachovia was surprised to see that Defendants and Stifel sought an award of attorneys' fees pursuant to the FCPA as well as the Wage Act. *Paduano Aff.,* at ¶ 5; Ex. A (Respondents' Memorandum of Law in Support of Attorney's Fees). Until that very day, the FCPA had never been mentioned, discussed or addressed in any way by anyone in the Arbitration. *Paduano Aff.,* at ¶ 5.

Later the same day, during closing arguments, the Panel asked Wachovia's counsel if he felt that "you have been given a fair opportunity to present your case in its entirety in these proceedings." *Paduano Aff.,* Ex. B, at p. 253 (Excerpt of Transcript of November 24, 2009 Hearing before the Panel). Counsel responded that he had not been given such an opportunity with respect to "the issues raised and argued as to attorneys' fees." *Id.,* at pp. 253-54. In

---

[4]    The Affidavit of Anthony Paduano, Wachovia's arbitration counsel, is included as Attachment C to this Memorandum.

particular, counsel observed, the FCPA required "notice and an opportunity to be heard." *Id.,* at p. 255.  Counsel further noted that "new issues have been injected [and t]his statute is not referred to in the pleadings.  So this is not just the element of surprise.  It's a complete surprise." *Id.,* at p. 255.  After an extended colloquy with counsel on this and other issues, the chairman of the Panel concluded by observing:

> The issue on attorneys' fees, I'm sure there will be something that will occur to the panel where we will need to seek clarification from parties.  And if that becomes necessary, be assured we will be in touch with you.

*Id,* at p. 263.  This assurance was not honored.  The Panel never sought further "clarification from the parties" on the issues raised by Wachovia's counsel, nor did it give Wachovia formal notice of potentially sanctionable conduct and an opportunity to be heard—as the FCPA expressly commands. *Paduano Aff.* at ¶ 7.  Instead, on December 18, 2009, the Panel issued its Award, which (i) denied all of Wachovia's claims, (ii) granted the Defendants' counterclaims under the Wage Act and awarded them total damages (including treble damages) of $15,080.68; and (iii) awarded Defendants and Stifel attorneys' fees of $1,111,553.85.  In making its fee award, the Panel relied only on the "authority of The South Carolina Frivolous Civil Proceedings Act, SC Code 15-36-10 and SC Code 41-10-80 [the Wage Act]." *Award,* at p. 4.[5]  Defendants had also requested fees and costs pursuant to the South Carolina Uniform Trade Secrets Act and the Panel's inherent authority to impose sanctions under the FINRA Code of Arbitration Procedure. *Paduano Aff.,* Ex. A, at p. 3.  The Panel did not grant those requests, however, but instead expressly denied "[a]ny and all claims for relief not specifically addressed herein." *Award,* at p. 5.

---

[5]     The Panel's Award is attached as Exhibit D to Defendants' Motion To Confirm.

### III.    ARGUMENT

This is the rare case in which the court must invoke its power under the Federal Arbitration Act to vacate an unfair and unjust arbitration award.  Although the FAA requires judges to give deference to arbitration awards, the courts retain the ultimate responsibility to ensure that arbitrators observe the fundamental dictates of due process.  An arbitration award is not self-executing, and it may be set aside when it results from proceedings that are fundamentally unfair or in which the arbitrators have exceeded their authority.  In particular, the FAA provides that a district court may vacate an arbitration award under the following circumstances:

> (1) where the award was procured by corruption, fraud, or undue means;
>
> (2) where there was evident partiality or corruption in the arbitrators, or either of them;
>
> (3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or
>
> (4) where the arbitrators exceed their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C. § 10. In addition to these statutorily-prescribed grounds, the Fourth Circuit has acknowledged the power of the district court to vacate an arbitration award that is made in "manifest disregard of the law."  *See, e.g., Apex Plumbing Supply, Inc. v. U.S. Supply Co., Inc.,* 142 F.3d 188, 193 n. 5 (4th Cir. 1998).  This power should not be regarded as existing independently of 9 U.S.C. § 10, however, but as a useful shorthand for describing the court's statutory authority to vacate.  *See Hall Street Associates v. , L.L.C. v. Mattel, Inc.,* 128 S.Ct. 1396, 1404 (2008) (holding that district court has no power to vacate an arbitration award

other than that granted by 9 U.S.C. § 10, but noting that "the term 'manifest disregard' . . . maybe merely referred to the § 10 grounds collectively, rather than adding to them"); *Stolt-Nielsen SA v. AnimalFeeds Int'l Corp.,* 548 F.3d 85, 94 (2d Cir. 2008) (holding that "manifest disregard, reconceptualized as a judicial gloss on the specific grounds for vacatur enumerated in section 10 of the FAA, remains a valid ground for vacating arbitration awards"); *Comedy Club, Inc. v. Improv West  Assocs.,* 553 F.3d 1277, 1290 (9th Cir. 2009) ("We have already determined that the manifest disregard ground for vacatur is shorthand for a statutory ground under the FAA, specifically 9 U.S.C. § 10(a)(4)").

Neither basis for the Panel's fee award—the FCPA or the Wage Act—can withstand Wachovia's motion to vacate the award under § 10 of the FAA.  The FCPA does not even apply to arbitration proceedings, and the Panel exceeded its authority by invoking the power of that Act.  Even if the FCPA had applied, the Panel manifestly disregarded the law and deprived Wachovia of a fundamentally fair hearing by ignoring the extensive procedural safeguards set forth in the Act.  Finally, the Panel exceeded its authority by arrogating to itself the power to sanction Wachovia for conduct that occurred before this Court.

To the extent that the Panel made an independent fee award to Defendants under the Wage Act, that award, too, must be vacated under § 10—for several reasons.  First, the Wage Act did not apply to the loan repayment dispute on which Defendants' counterclaims were based.  Even if it did, the Panel had no evidence before it sufficient to determine a "reasonable" fee award under the Wage Act.  Finally, the Panel deprived Wachovia of the evidence that it needed to fully and fairly challenge any claim to a fee award under the Wage Act.

### A.    The Panel's fee award to Defendants under the FCPA must be vacated.

As noted above, a court may vacate an arbitration award, under § 10(a)(4) of the FAA, if the arbitrators exceeded their authority by acting in "manifest disregard" of the law. To "secure judicial relief on such grounds, it must be shown that the arbitrator, in making his ruling, was 'aware of the law, understood it correctly, found it applicable to the case before [him], and yet chose to ignore it in propounding [his] decision.'" *Long John Silver's Restaurants, Inc. v. Cole*, 514 F.3d 345, 349 (4th Cir. 2008), *quoting Remmey v. PaineWebber, Inc.,* 32 F.3d 143, 149 (4th Cir. 1994). *See Patten v. Signator Ins. Agency, Inc.,* 441 F.3d 230, 235 (4th Cir. 2006) (vacating arbitration award because arbitrator had acted in manifest disregard of the law by reading a one-year statute of limitation into the arbitration agreement). Here, the Panel was clearly aware of the governing law regarding the FCPA; the relevant portion of the statute was attached as an exhibit to Defendants' fee petition. *See Paduano Aff.,* Ex. A. Yet the Panel exceeded its authority and manifestly disregarded the FCPA by: (i) deciding that the Act applied to arbitration proceedings and (ii) refusing to grant Wachovia the notice and opportunity to be heard guaranteed by the Act.

### 1.    The Panel exceeded its authority by acting under the FCPA, which does not apply to arbitration proceedings.

The FCPA authorizes the award of sanctions by a "court" after a "trial." S.C. Code Ann. § 15-36-10(C). It also prohibits the filing of frivolous pleadings and documents in "civil" or "administrative" actions. *Id.,* at § 15-36-10(A)(1). No provision of the Act refers to "arbitrators" or "arbitrations." This omission is no accident, but is consistent with the South Carolina Court of Appeals' observation that the "fundamental objective" of the Act is "deterring egregious misuses of *the court system*[.]" *Father v. S.C. Dept. of Social Svcs.*, 345 S.C. 57, 67, 545 S.E.2d 523, 528 (Ct. App. 2001)(emphasis added); *see also Martin v. South*

*Carolina Dep't of Corrections*, 350 S.C. 196, 197, 565 S.E.2d 756, 757 (2001) ("By definition, civil actions or proceedings are brought at the trial court level."). Indeed, the rigorous and extensive procedural requirements of the Act—which include a detailed and protracted procedure that a court (not an arbitration panel) must follow when determining whether sanctions should be awarded and which demand that the court make particularized findings according to a seven factor test—are simply inconsistent with the informal and expedited nature of arbitration proceedings.

South Carolina courts must follow the literal meaning of unambiguous statutory terms. *See, e.g., Father v. S.C. Dep't of Soc. Svcs.*, 353 S.C. 254, 259, 578 S.E.2d 11, 13-14 (2003); *Citizens for Lee County, Inc. v. Lee County*, 308 S.C. 23, 416 S.E.2d 644 (1992). This is especially true of a statute providing for an award of attorney's fees, for such a statute "is in derogation of the common law and must be strictly construed." *Dowability v. Chambless,* 344 S.C. 558, 561-62, 544 S.E.2d 646, 648 (Ct. App. 2001). Accordingly, the Panel exceeded its authority—and manifestly disregarded the law—by arrogating to itself the power to award sanctions under the FCPA, when the clear and unambiguous language of the Act gives that power only to a "court" following a "trial." Therefore, its fee award should be vacated under § 10(a)(4) of the FAA. *See also Gas Aggregation Services, Inc. v. Howard Avista Energy, LLC*, 319 F.3d 1060 (8th Cir. 2003) (finding that arbitrators evidenced manifest disregard for the law by awarding fees under an inapplicable statute); *Riko Enterprises, Inc. v. Seattle Supersonics Corp.,* 357 F. Supp. 521 (S.D.N.Y. 1973) (vacating, under § 10(b)(4) of the FAA, NBA's Commissioner's imposition of penalties because such penalties could be imposed only by the NBA's Board of Governors, not the Commissioner).

    2.      **In making a fee award under the FCPA, the Panel exceeded its authority by claiming for itself this Court's exclusive power to sanction parties for their conduct in judicial proceedings.**

The Award's only suggestion of support for the Panel's apparent opinion that Wachovia had engaged in sanctionable misconduct is its direction that the parties inform this Court of certain alleged misrepresentations made in connection with Wachovia's application for temporary injunctive relief. Such allegedly improper conduct took place not before the Panel, however, but before this Court. The Panel had no authority to review such activities and impose sanctions for them. That authority rests only with this Court, as the tribunal before which the alleged misrepresentations were made. *Hutchins v. Cardiac Science, Inc.,* 456 F. Supp. 2d 173, 194 (D. Mass. 2006) (holding that the court lacked jurisdiction "to impose sanctions for supposed misrepresentations made before another tribunal"); *Healey v. Labgold*, 271 F. Supp. 2d 303, 305 (D.D.C. 2003) (holding that "it would be an obvious usurpation of jurisdiction" for a tribunal to sanction behavior that occurred in another court).

Moreover, the power to sanction misconduct committed in a federal district court comes not from the FCPA, but from Rule 11 of the Federal Rules of Civil Procedure. A federal court sitting in diversity applies state substantive law and federal procedural law. *E.g., Hanna v. Plumer,* 380 U.S. 460, 464 (1965). As at least one federal circuit court has observed, a rule imposing sanctions for attorneys' fees based on the conduct of the parties in advancing the claim—rather than on the parties' success on the underlying merits of the claim—is procedural, not substantive, in nature. *First Bk. of Marietta v. Hartford*

*Underwriters Ins. Co.,* 307 F.3d 501, 529 (6th Cir. 2002).  Thus, Rule 11, not the FCPA, applies here.[6]

Because the Panel exceeded its authority by (i) claiming for itself the power to sanction Wachovia for conduct that occurred in court, and (ii) acting under the FCPA when only Rule 11 governs misconduct committed in court, the Panel's fee award must be vacated under § 10(a)(3) of the FAA.

> ### 3.    Even if the Panel had authority to sanction Wachovia under the FCPA, the Panel exceeded its authority and manifestly disregarded the law by ignoring the Act's clear and unmistakable conditions precedent to an award of sanctions—including notice and an opportunity to be heard.

Even if the Panel had the authority to award attorneys' fees under the FCPA, it manifestly disregarded the law by ignoring a number of the Act's "stringent requirements for recovery," *Father, supra*, 345 S.C. at 67, 545 S.E.2d at 528.  First, the Panel issued its fee award under the FCPA contemporaneously with its decision on the merits of the parties' respective causes of action.  The FCPA provides, however, that a motion for sanctions cannot be raised until "the conclusion of [the] trial and *after* a verdict for or a verdict against damages had been rendered[.]"  S.C. Code Ann. § 15-36-10(C)(1) (emphasis added); *see Rich v. Walsh*, 357 S.C. 64, 73 n.3, 590 S.E. 2d at 506, 510 (Ct. App. 2003)("We note that consideration of the Frivolous Claims Act is appropriate only after the Bank can show the proceedings have terminated in its favor").  The Panel ignored this requirement by issuing its fee award under the FCPA contemporaneously with its decision on the merits of the parties' respective causes of action.

---

[6]    As discussed in Section.III., *infra,* of this memorandum, there exists no basis for this Court to impose sanctions on Wachovia or its counsel.

Secondly, and more fundamentally, the Panel ignored the FCPA's express command that Wachovia be provided with notice and an opportunity to be heard before making a sanctions award. This FCPA was adopted by the South Carolina General Assembly in 1988. In 2005, the statute was substantially amended, in part to add the following provision:

> A person is *entitled to notice and an opportunity* to respond before the imposition of sanctions pursuant to the provisions of this section. *A court or party* proposing a sanction pursuant to this section *shall notify* the court and *all parties of the conduct constituting a violation* of the provisions of this section *and explain the basis* for the potential sanction imposed. Upon notification, *the attorney, party, or pro se litigant who allegedly violated subsection (A)(4) has thirty days to respond* to the allegations as that person considers appropriate including, but not limited to, *by filing* a *motion to withdraw the pleading*, motion, document, or argument *or by offering an explanation of mitigation*.

S.C. Code § 15-36-10(D) (emphasis added). As noted above, the notice required by this subsection is to be given *after* a verdict has been rendered in the action. *Id.*, at § 15-36-10(C). Thus, a court may not simply rely on evidence and argument received in the course of the trial of the action when deciding whether to award fees and expenses (or any other form of sanctions) under the FCPA. Instead, the party against whom sanctions are sought must be given *separate* notice of the alleged misconduct on which the sanctions may be based and a *separate* opportunity to respond. These provisions reflect the South Carolina General Assembly's special solicitude for the due process rights of parties against whom an FCPA claim is made—a solicitude that the arbitrators failed either to heed or share.

Indeed, the Panel here failed to accord *any* respect to the due process rights guaranteed Wachovia by the FCPA. Defendants' "notice" of their intention to seek sanctions under the FCPA was raised for the first time on November 24, 2009—after the evidentiary record had been closed and minutes before closing arguments. *Paduano Aff.,* at ¶ 5. Instead of offering a

specific factual basis for the sanctions that they were seeking (as the FCPA anticipates), Defendants simply relied in their memorandum on "the facts as presented to the Panel over 39 days of hearings." *Paduano Aff.,* Ex. A, at p. 5. Despite this hopelessly vague, last-minute notice, Wachovia did its best to secure a hearing on the issue—pointing out to the Panel that the statute required "notice and opportunity to be heard," *Paduano,* Ex. B, at p. 255, and informing the Panel that, consequently, it had not been given a "full and fair opportunity to present [its] case in its entirety in these proceedings." *Id.,* at 253-54. Remarkably, the Panel swept aside Wachovia's objection, instead promising that it would "be in touch with you" if it needed to seek "clarification" on the "issue on attorney's fees." *Id.,* at p. 263. The Panel requested no further argument or evidence from Wachovia on the FCPA before issuing its Award.[7]

The "rigorous requirements" of the FCPA are intended to ensure that a party receives a fundamental measure of due process before sanctions may be awarded against it. By blatantly and egregiously ignoring these requirements, the Panel evidenced a manifest and cavalier disregard for clearly-established law, and its fee award should be vacated pursuant to § 10(a)(4) of the FAA.

<blockquote>

**4.    The Panel's failure to respect the procedural safeguards contained in the FCPA deprived Wachovia of a fundamentally fair hearing on the issue of whether Defendants should be awarded fees under the Act.**

</blockquote>

Though a "court will not set aside an arbitration award [under § 10(a)(3) of the FAA] because the arbitrator refused to hear evidence that was immaterial . . . cumulative . . . or irrelevant," *Int'l Marrowbone Dev. Co., supra,* 232 F.3d at 388, a "federal court is entitled to

---

[7]    The Panel did subsequently ask the parties to submit information concerning the fees and expenses that they had incurred in November, but it sought nothing from Wachovia in response to the FCPA claim raised by Defendants. *Paduano Aff.,* at ¶ 4 n. 1.

15

vacate an arbitration award . . . if the arbitrator's refusal to hear pertinent and material evidence deprives a party to the proceeding of a fundamentally fair hearing." *Three S Delaware, Inc. v. DataQuick Info. Sys., Inc.,* 492 F.3d 520, 531 (4th Cir. 2007). "A fundamentally fair hearing requires the procedural steps of notice, an opportunity to be heard, the opportunity to present evidence which is relevant and material, and arbitrators who are not infected with bias." *Bowles Financial Group, Inc. v. Stifel, Nicolaus & Co., Inc.,* 22 F.3d 1010, 1013 (10th Cir. 1994). The federal courts have not hesitated to vacate awards issued by arbitrators that failed to provide this basic measure of due process. *See, e.g., Hoteles Condado Beach v. Union De Tronquistas*, 763 F.2d 34, 38-40 (1st Cir. 1985) (vacating arbitration award in part because of arbitrator's refusal to consider evidence, that was destructive of hotel's right to present its case); *Teamsters v. E.D. Clapp Corp.,* 551 F. Supp. 570, 578 (N.D.N.Y. 1982), *aff'd* 742 F.2d 1441 (2d Cir.1982) (vacating arbitration award under § 10(a)(3) for arbitrator's refusal to hear evidence pertinent and material and noting that "principles of fundamental fairness required that the Union be given a full opportunity to present its case to the arbitrator for consideration.")

Nothing is more essential to fundamental fairness than notice and an opportunity to be heard. As in *Hoteles*, *supra,* where the arbitrator's refusal to consider a trial transcript submitted by a party was found to deny the parties an "adequate opportunity to present its evidence and arguments," 763 F.2d at 39-40, here Wachovia was denied its clear, statutory right to a full and fair hearing on Defendants' FCPA claim for sanctions. The resulting fee award of $1.1 million (representing almost 99 percent of the Panel's total Award)—based principally on an FCPA claim for sanctions to which Wachovia was forced to stand mute— cannot be justified and must be vacated under § 10(a)(4) of the FAA.

16

**5.     Wachovia was prepared to submit extensive evidence demonstrating that neither it nor its counsel had committed conduct sanctionable under the FCPA.**

The FCPA puts the burden of proof on the party seeking sanctions, providing that:

[u]nless the court finds *by a preponderance of the evidence* that an attorney, party, or pro se litigant *engaged in advancing a frivolous claim* or defense, the attorney, party, or pro se litigant *shall not be sanctioned*.

Id. § 15-36-10 (C)(2) (emphasis added).  A "frivolous claim" is defined under the FCPA as one that "a reasonable attorney in the same circumstances would believe" either "was clearly not warranted" under the given facts (§15-36-10(C)(1)(a)), or "was intended merely to harass or injure the other party" (§15-36-10(C)(1)(b)), or "was interposed merely for delay, or was brought for a purpose other than securing proper discovery, joinder of proposed parties, or adjudication of the claim or defense upon which the proceedings are based" (§15-36-10(C)(1)(c)).  In *Hanahan v. Simpson*, 326 S.C. 140, 157, 485 S.E.2d 903, 912 (1997), the South Carolina Supreme Court held that "a person taking part in the initiation or continuation of proceedings acted with a proper purpose 'if he reasonably believes in the existence of facts upon which his claim is based' and either (1) reasonably believes under the facts that his claim may be valid under existing or developing law, or (2) relies upon the advice of counsel, sought in good faith and given after full disclosure of all facts within his knowledge." *Id.*

As noted above, Defendants did not offer any specific evidence that Wachovia or its counsel advanced a frivolous claim in the Arbitration.  Instead, they simply referred to "the facts as presented to the Panel over 39 days of hearings" in their memorandum seeking attorneys' fees.  *Paduano Aff.,* Ex. A, at p. 5.  This "notice" of potentially sanctionable conduct is manifestly insufficient to satisfy the rigorous standard of § 15-36-10(D).  But had Wachovia been permitted to respond, it would have adduced ample evidence demonstrating

that it and its counsel had a "reasonable belief" in the facts and law supporting its claims. Wachovia's position is summarized in the extensive affidavit of its arbitration counsel, Anthony Paduano, submitted in connection with this Motion. *See Paduano Aff.*, ¶¶ 9 - 38. Mr. Paduano's affidavit demonstrates that Wachovia had a good faith basis for its belief that its claims were meritorious. Accordingly, had the Panel provided Wachovia with the due process that the FCPA requires, Defendants would not have been able to satisfy the burden of proof required for an award of sanctions under the Act.

### B.    The Panel's fee award to Defendants under the Wage Act must be vacated.

It is apparent that the Panel relied principally (if not almost entirely) on the FCPA—not on the Wage Act—in making its fee award to Defendants. Testimony on Defendants' counterclaims under the Wage Act amounted to only about one hour of the 63 sessions of testimonial hearings held in the Arbitration. *Paduano Aff.*, at ¶ 8. Indeed, Defendants' own counsel admitted that Defendants' fees and expenses were incurred "principally [in] defending the claims that Wachovia [had made]"—not in prosecuting Defendants' counterclaims. *Paduano Aff.*, Ex. D, at p. 117 (Excerpt of Transcript from November 24, 2009 Hearing before the Panel).

To the extent that the Panel made an independent fee award to Defendants under the Wage Act, that award, too, was improper and should be vacated—for two reasons. First, the Wage Act was inapplicable to Defendants' counterclaims—which amounted to a dispute over loan repayment, not wages. Second, the Panel failed to apportion its award between fees recoverable under the Wage Act and non-recoverable fees. Finally, the Panel denied Wachovia a full and fair hearing by refusing to permit it even to review—much less rebut— the evidentiary support that South Carolina law requires to support a "reasonable" fee award.

18

### 1.     The Wage Act did not apply to Defendants' counterclaims.

S.C. Code Ann. § 41-10-80(C) gives a private right of action to an employee whose employer had failed to pay "wages due."  "Wages" are defined under the Wage Act as follows:

> (2) "Wages" means all amounts at which labor rendered is recompensed, whether the amount is fixed or ascertained on a time, task, piece, or commission basis, or other method of calculating the amount . . . includes vacation, holiday, and sick leave payments which are due to an employee under any employer policy or employment contract. Funds placed in pension plans or profit sharing plans are not wages subject to this chapter.

S.C. Code § 41-10-10(2).  As the South Carolina Supreme Court has explained, "[t]he Wage Act governs payment of employee wages whether earned 'on a time, task, piece or commission basis.'" *Adamson v. Marianne Fabrics, Inc.,* 301 S.C. 204, 206, 391 S.E.2d 249, 250 (1990) (emphasis added) (holding earnings of independent contractors are not "wages" under the Wage Act); *see also Matthews v. City of Greenwood*, 305 S.C. 267, 271-72, 407 S.E.2d 668, 670 (Ct. App. 1991) (holding that paid military leave is "an entitlement created by statute," not "an amount at which labor rendered is recompensed" that is cognizable under the Wage Act).

Here, Defendants' counterclaims were all based on loans made to them by Wachovia in anticipation of bonuses to be earned.[8]  At closing argument, Defendants' counsel contended that Defendants Stukes, Jones, and Slaughter had "overpaid" these loans to Wachovia following the termination of their employment by $332, $721, and $2,163, respectively. Defendants sought recovery of these alleged overpayments under the Wage Act.

---

[8]     Defendants' counterclaims under the Wage Act (excerpted from their Answer) are collected as Attachment D to this Memorandum.

19

There existed a vigorous dispute between the parties as to whether Defendants had been paid by Wachovia everything to which they were entitled. But setting this dispute aside, it is manifestly clear that Defendants' counterclaims—which involved a dispute over alleged loan repayments—was not a dispute over "wages" under the Wage Act. Accordingly, the Panel exceeded its authority by awarding fees to the Defendants under that Act.

>    **2.    The Panel manifestly disregarded the law's requirement that any attorney's fee award be "reasonable."**

Even if the Wage Act had applied to this dispute, the Panel manifestly disregarded the requirement that any fee award made under that Act be "reasonable." Under both the FCPA and the Wage Act, a court may award a party only its "reasonable" attorneys' fees. S.C. Code Ann. §§ 15-36-10(G)(1) (FCPA); 41-10-80. Whether a fee is "reasonable" depends on six factors: "(1) the nature, extent and difficulty of the case; (2) the time necessarily devoted to the case: (3) professional standing of counsel; (4) contingency of compensation; (5) beneficial results; and (6) customary legal fees for similar services." *Jackson v. Speed*, 326 S.C. 289, 308, 486 S.E.2d 750, 760 (1997). Moreover, "[a]s a general rule, attorney's fees are not recoverable unless authorized by contract or statute." *Id.,* 326 S.C. at 307; 486 S.E.2d at 759. Thus, a court reviewing a claim for fees must distinguish between those fees that are recoverable by contract or statute and those that are not. *See Utilities Construction Co., Inc. v. Wilson*, 321 S.C. 244, 468 S.E.2d 1 (Ct. App. 1996) (reversing and remanding fee award for determination of fees incurred in connection with the defense of a mechanic's lien cause of action—the only cause of action for which recovery of fees was allowed); *Sunrise Sav. & Loan Ass'n v. Mariner's Cay Dev. Corp.,* 295 S.C. 208, 211 367 S.E.2d 696, 698 (1988) (remanding fee award of $125,000 in a case involving five causes of action when fees allowed only in connection with one cause of action; court noted that "an award of $125,000 on one

20

cause of action is outrageous and shocking the conscience of the court"); *Laser Supply &*
*Services, Inc. v. Orchard Park Assoc.,* 382 S.C. 326, 342, 676 S.E.2d 139, 148 (Ct. App.
2009) (remanding fee award so that trial court could exclude fees incurred in connection with
contract for which fees were not recoverable).

Here, the Panel awarded Defendants *all* of the fees and expenses they requested.
Opposing counsel conceded at closing argument, however, that Defendants' fees and
expenses were incurred "principally defending the claims that Wachovia [filed]"—claims for
which no recovery of fees was authorized. *Paduano Aff.,* Ex. D, at p. 117. Even if the Wage
Act had applied, then, the Panel was obligated to determine what portion of Defendants'
requested fees and expenses were incurred in connection with that Act, and to apportion its
fee award accordingly.    The Panel made no such effort here; instead, it simply gave
Defendants every penny of the fees and expenses that they had claimed.

Because the Panel failed to make any attempt to distinguish between the fees incurred
in connection with Defendants' Wage Act counterclaims and Defendants' other fees and
expenses, the Panel manifestly disregarded the law and generated a patently unreasonable fee
award.  That award—some 70 times the Defendants' actual damages on their counterclaims—
is entirely unconstrained by the six-factor test of reasonableness set forth by the South
Carolina Supreme Court in *Jackson,* and it clearly includes fees and expenses unrecoverable
under the Wage Act.  Accordingly, the entire fee award should be vacated under § 10(a)(4) of
the FAA.  *See Utilities Construction Co., supra; Sunrise Sav. & Loan Ass'n, supra; see also*
*Layman v. State*, 376 S.C. 434, 451-55, 658 S.E.2d 320, 329-31 (2008) (reversing as
unreasonable an award of attorneys' fees in the amount of $8.66 million  and noting that "the
overriding benchmark . . .  is that attorney fees must be 'reasonable.'"); *Am. Fed. Bank, FSB*

21

*v. No. One Main Joint Venture*, 321 S.C. 169, 175, 467 S.E.2d 439, 442-43 (1996) (holding that an attorneys' fee award of 10% of the amount of the judgment in the amount of $28,635.64 was unreasonable, when evidence of attorney fees in the amount of $16,926.15 was submitted; award was modified to amount evidenced).

**3.    The Panel denied Wachovia a full and fair hearing by preventing it from even reviewing (much less rebutting) the legal bills and invoices submitted by Defendants in support of their claim for attorneys' fees and expenses.**

Compounding the extensive errors described above, the Panel prevented Wachovia from reviewing the legal bills and other invoices that Defendants had submitted in support of their fee claim. Instead, on October 22, 2009, the Panel instructed the parties to submit those bills and invoices only to the Panel, and to exchange with each other only the total amount of fees and expenses incurred. *Paduano Aff.,* ¶ 3. Such a direction prevented Wachovia from fully and fairly challenging Defendants' fee claim (under either the FCPA and the Wage Act), and it offers a separate and independent basis for vacating the Panel's fee award under § 10(a)(3) of the FAA.

As noted above, South Carolina law required the Panel to award only a "reasonable" attorneys' fee and to distinguish between fees recoverable under a particular statute (*e.g.,* the Wage Act) and fees that were not recoverable. Here, it appears, Defendants did not offer any evidence that would have enabled the Panel to apportion attorneys' fees recoverable and non-recoverable activities. Nor, it seems, did Defendants submit any evidence to indicate that their attorneys' fees were customary or in line with market rates for attorneys of similar background or experience. Thus, Wachovia had no opportunity to determine, for example, how much time Defendants' counsel had devoted to the Defendants' Wage Act counterclaims and how much time was spent on causes of action for which no fee recovery was permitted.

Nor could Wachovia conduct the sort of general, searching review that is necessary to challenge the "reasonableness" of a requested fee award.

In sum, because Wachovia was not offered any meaningful opportunity to challenge the $1.1 million in fees and expenses sought by Defendants, the Panel deprived Wachovia of a full and fair hearing on the issue of legal fees. The Panel's resulting fee award should be vacated pursuant to § 10(a)(3) of the FAA.

### III. NO EVIDENCE EXISTS IN SUPPORT OF DEFENDANTS' CLAIM THAT WACHOVIA SHOULD BE "HELD ACCOUNTABLE" FOR ITS MISREPRESENTATIONS.

#### A. Defendants have failed to identify the alleged "misrepresentations" for which they believe Wachovia should be "held accountable."

In support of their request to confirm the Award, Defendants contend that "the arbitration panel was *compelled* to order the parties to advise the Court of Wachovia's misrepresentations that had been made to the Court in order to obtain injunctive relief." *Defendants' Mem. in support of Motion To Confirm*, at p. 4 (emphasis in original). This is hyperbole; as noted above, the Panel found only that the written Declarations that Wachovia presented to the Court, and the representations made at the hearing on injunctive relief, "may" have been false or inconsistent with what was shown on the videotape. Tellingly, the Panel did not identify any particular alleged misrepresentations relating to Wachovia's application for injunctive relief, making it virtually impossible for Wachovia and its counsel to rebut the Panel's findings. Defendants' Motion is equally vague, claiming, for example, that the Declarations of Scott Spang and Baxter Hahn that Wachovia submitted to the Court included "materially false representations to the Court," *Defendants' Motion To Confirm,* at ¶ 9, but failing to identify those particular misrepresentations. In the same vein, Defendants accuse Wachovia's counsel, Kathryn Bedke, of making "numerous factual representations to the

23

Court that were not supported by any record evidence," *Defendants' Motion To Confirm,* at ¶ 10, but, yet again, they fail to identify any particular such misrepresentations. *Id.,* at p. 5. If the Defendants are going to accuse Wachovia and its counsel of the extremely serious charge of making misrepresentations to this Court and ask the Court to "hold Wachovia fully accountable" for such misrepresentations, *id.,* at p. 10, they should at least be prepared to describe the basis for that charge in reasonable detail. Neither Wachovia nor its counsel should have to make guesses in order to defend themselves. *See* Fed. R. Civ. P. 11(c)(2) ("A motion for sanctions must be made separately from any other motion and must describe the specific conduct that allegedly violates Rule 11(b).")

   **B.    Wachovia's independent review of the DVD that it submitted to the Court has yielded evidence of one misstatement made by its counsel, which was not material in light of the other, undisputed evidence on which the Court based its order for limited injunctive relief.**

       In light of the Panel's conclusion that "[t]he videotape [actually, a DVD submitted to the Court on Wachovia's application for injunctive relief] does not support the allegations made by Claimant in Court," *Award,* at p. 5, Wachovia has undertaken its own review of the DVD. As explained in the supporting Affidavit of Wachovia's counsel, Kathryn L. Bedke, that review has yielded evidence of a single inaccurate statement that Ms. Bedke made during the hearing on Wachovia's application for injunctive relief. Ms. Bedke told the Court during that hearing that Defendants were seen "going back and forth between the [Wachovia and Stifel] offices, taking documents over." *Trans. of June 27, 2008 Hrg.* (Attachment B)*,* at pp. 32-33. This was incorrect. The surveillance tape does show the Defendants taking boxes out of Wachovia's office, but it does not show them carrying the same boxes into Stifel's new office. *Bedke Aff.,* at ¶ 13.

Ms. Bedke's misstatement at the hearing was, as she explains in her Affidavit, the result of a miscommunication between her and the private investigator that Wachovia had engaged to conduct surveillance of Defendants. *Id.,* at ¶ 8. Unfortunately, due to the press of time, and because of problems in converting the surveillance to a useable media, Ms. Bedke did not have time to review the DVD herself before submitting it to the Court. *Id.,* at ¶¶ 9-12. This was regrettable, and Ms. Bedke has apologized to the Court in her for the misstatement that she made as a result. *Id.,* at ¶ 12. She made that statement in good faith, based on the understanding that she had gained from her conversation with Wachovia's private investigator, and she certainly did not intend to gain any unfair litigation advantage by it. *Id.,* at ¶ 16.

Contrary to what Defendants suggest in their Motion, however, there existed independent evidence (apart from the DVD) to support Ms. Bedke's statement that certain of the Defendants were "taking documents over" from Wachovia's office to Stifel's office. It is undisputed that Defendants Stukes, Jones and Slaughter took from Wachovia a range of nonpublic client information that they collected on thumb drives—information not covered by the industry's Protocol for Broker Recruiting. Moreover, *after* he was fired, Defendant Slaughter returned to Wachovia's office and left with a shoulder briefcase that contained handwritten notes containing additional nonpublic client information, such as social security numbers, dates of birth, and rating information. *Bedke Aff.,* at ¶ 14. Thus, it was true, as Ms. Bedke represented at the June 27, 2008 hearing, that the Defendants were "taking documents over" from Wachovia to Stifel, although such conduct was not actually shown on the DVD submitted to the Court.

In virtually every case in which emergency injunctive relief is sought, the parties and the Court are required to act within pressing time frames and on the basis of a limited factual record. That is what happened here. Wachovia and its counsel conducted an investigation and made their arguments to the Court honestly and in good faith. Unfortunately, those arguments contained the misstatement described above, which Wachovia and its counsel regret and for which they counsel apologize. But there is no basis for claiming, as Defendants do, that Wachovia acted in "extreme bad faith," sought to "deliberately abus[e] the system," or "purposefully abused the Court's trust." *Defendants' Motion*, at pp. 4-5. These charges are overblown and entirely misplaced.

As sometimes happens in the press of accelerated injunctive proceedings, Defendants' counsel, Andrew Shapren and Rene Josey, also made misstatements of fact to this Court at the June 27 hearing. In his opening remarks to the Court, Mr. Shapren said:

> First of all, let me make it clear, there were a lot of agreements mentioned. There is no agreement signed by these individuals that prohibits them from soliciting their clients or soliciting their employees.

*Trans. of Hrg.* (Attachment B to this Memorandum), at p. 24. Later, Mr. Shapren emphasized this point, noting that:

> I know we're kind of beating a dead horse, but once again, there's absolutely no contract that prohibits solicitation whatsoever[.]"

*Id.,* at p. 49. Relying on these representations, the Court ruled that "I will allow solicitation, the Defendants to solicit, in light of the fact that there's nothing specific that restricts it in place." *Id.,* at p. 62.

In fact, there *were* nonsolicitation agreements between Wachovia and the Defendants at the time of the June 27, 2008 hearing. Promissory notes between Defendants Stukes, Jones and Slaughter and Wachovia each included the following provision:

>   Nonsolicitation Covenant.  In consideration of the amounts advanced
>   by Wachovia to you and evidenced by this Note, you agree that if your
>   employment with Wachovia or any successor company ends for any
>   reason before the entire amount of this Note has been paid in full, FOR
>   A PERIOD OF ONE YEAR THEREAFTER, you will not solicit,
>   directly or indirectly, the business or accounts of any of the customers
>   of Wachovia (a) serviced by you during your employment with
>   Wachovia or (b) whose names became known to you while employed
>   by Wachovia until such time as you have paid Wachovia the remaining
>   unpaid principal balance and accrued interest then owed under this
>   Note.[9]

At the time of the June 27, 2008 hearing, Wachovia's counsel, Ms. Bedke, was unaware of

these nonsolicitation provisions, because Wachovia had not located the promissory notes in

which they appeared.  *Bedke Aff.,* at ¶ 17.  Defendants *were* aware of them, because the

promissory notes were attached to affidavits that the Defendants filed with the Court and that

Defendants' counsel, Mr. Josey, handed to the Court during the hearing.   *Id.*.  Neither Mr.

Josey nor the Defendants (who were present in court during the hearing), however, corrected

Mr. Shapren's misstatements that no such agreements existed.

    It is not at all clear, from the evidence that Wachovia has at hand, why Mr. Shapren

made repeated misstatements to the Court concerning Defendants' nonsolicitation

agreements.   Nor is it clear why Mr. Josey and Defendants failed to correct those

misstatements.   Perhaps Messrs. Josey and Shapren had not had an opportunity fully to

discuss the evidence with their clients, or to review such evidence for themselves.  Wachovia

is certainly not prepared to claim, on the basis of the evidence before it, that Defendants or

their lawyers acted "in extreme bad faith" or "purposefully abused the Court's trust."  Instead,

---

[9]     These promissory notes—all exhibits to affidavits that Defendants filed in response to
Wachovia' motion for injunctive relief—are collected as Attachment E to this Memorandum.
(Brand did not file his note with the Court.)  At the time of the June 27, 2008 hearing,
Defendants had not repaid the notes in full, although, on the day before the hearing, they
indicated their willingness to do so once they had been provided by Wachovia with the
amounts that they owed.

Wachovia submits that the Court should presume that counsel, as officers of the Court, are acting honestly and in good faith in the absence of compelling evidence to the contrary.

## IV.        CONCLUSION

For all of the reasons set forth above, Wachovia asks that the Court vacate those portions of the Award that awarded the Defendants their attorney's fees and expenses and that awarded the Defendants actual damages on their counterclaims under the Wage Act.

This 15th day of January, 2010.

                              ROBINSON, BRADSHAW & HINSON, P.A.

                              /s/ Stephen M. Cox_____
                              Stephen M. Cox
                              Fed. I.D. No. 6913

                              Benjamin A. Johnson
                              Fed. I.D. No. 2186

                              ROBINSON BRADSHAW & HINSON, P.A.
                              140 East Main Street, Suite 420
                              Rock Hill, South Carolina 29730
                              (803) 325-2900

                              MCANGUS GOUDELOCK & CURRIE, LLC
                              700 Gervais Street, Suite 300
                              Columbia, South Carolina  29211
                              (803) 779-2300

                              PADUANO & WEINTRAUB LLP
                              1251 Avenue of the Americas
                              Ninth Floor
                              New York, New York 10020
                              (212) 785-9100