UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| WACHOVIA SECURITIES, LLC, )<br>as successor in interest to )<br>A.G. Edwards & Sons, Inc., )<br>        )<br>   Plaintiff    )<br>         )<br>v.          )<br>         )<br>FRANK J. BRAND, II,  )<br>STEPHEN N. JONES,  )<br>MARVIN E. SLAUGHTER )<br>and GEORGE W. STUKES )<br>         )<br>   Defendants  ) | CIVIL ACTION NO.<br>08-CV-02349-TLW |

## AFFIDAVIT OF ANDREW J. SHAPREN

I, Andrew J. Shapren, being duly sworn, depose and state as follows:

1. I am an attorney with the law firm of Buchanan Ingersoll & Rooney PC, attorneys for Defendants Frank J. Brand, Stephen N. Jones, Marvin E. Slaughter, and George W. Stukes (together "Defendants"). I also represented the Defendants and their employer, Stifel, Nicolaous & Co., Inc. during the related FINRA arbitration captioned <u>Wachovia Securities, LLC v. Stifel Nicolaus & Co., Inc., Frank J. Brand, II, Marvin Slaughter, Stephen N. Jones, and George W. Stukes</u>, FINRA Case Number 08-02137 (the "Arbitration"). While I now represent Mr. Brand, I did not at the time of the Court's June 27, 2008 hearing in this matter. I make this Affidavit based upon my personal knowledge and review of the pleadings in the above-captioned matter and the Arbitration. I make this Affidavit in support of Defendants' Reply Brief in Support of Notice of Arbitration Award.

## The Road Show

2.  After Wachovia Securities, LLC ("Wachovia") announced its acquisition of A.G. Edwards & Sons, Inc. ("A.G. Edwards") on May 31, 2007, Wachovia held a number of "Road Shows" across the country. A video recording of one of these Road Shows that includes video of Wachovia CEO Danny Ludeman ("Ludeman") speaking was admitted into evidence at the Arbitration. A copy of that video recording can be made available to the Court upon request.

3.  In the video recording admitted into evidence at the Arbitration, Ludeman stated that he does not believe in anything more strongly than Wachovia's "Five Stakes in the Ground."

4.  Below is a true and correct statement that Danny Ludeman made on the video recording of the Road Show, admitted into evidence at the Arbitration, in which Ludeman explained Wachovia's first stake in the ground as follows:

> We believe that there is a unique relationship between a financial consultant and your client. We as a firm stand in service to our financial consultants and not the other way around. We believe that the financial consultant absolutely owns the client at this firm, the firm does not own the client, and fundamentally it's the financial consultant's entrepreneurial sprit that drives the firm. Therefore, that is why the financial consultant will always be our primary client at this firm.

## Wachovia's Allegations Against Me

5.  In its Motion to Vacate Arbitration Award, Wachovia claims that I made misrepresentations to this Court by stating that the Defendants were not party to any agreements that prohibited them from soliciting clients or employees. Specifically, Wachovia points to a non-solicitation clause contained in retention bonus agreements (the "Retention Bonus Agreements") signed by the Defendants and implies that, if Wachovia had known that the Defendants had signed such Retention Bonus Agreements, it would have raised the issue with

2

the Court. While this allegation is entirely immaterial to the issues before the Court, and appears intended solely to smear me, I feel compelled to address it.

6. The Wachovia-prepared, Wachovia-offered, Wacovia-retained Retention Bonus Agreements signed by the Defendants contained a non-solicitation clause in the event the Defendants did not pay off the remaining portions of their retention bonuses after the termination of their employment. If, however, the Defendants paid off the remaining portions of their retention bonuses after the termination of their employment, the non-solicitation clause contained in the Retention Bonus Agreements would be null, void and unenforceable on its face.

7. On June 26, 2008, when Wachovia Complex Manager, Scott Spang ("Spang") terminated Defendants, he advised at least one of them that he was going to sue them and obtain an injunction in federal court. In trying to understand the basis for such a suit, Defendants assumed that Wachovia would, though baselessly, attempt to sue them under their Retention Bonus Agreements.

8. Within hours of their terminations, Defendants Slaugther, Jones and Stukes, through counsel, delivered to Wachovia a letter advising that they stood ready to pay their retention bonus balances in full as soon as Wachovia advised them of their the pay-off balances. *See* June 26, 2008 letter from R. Josey to Wachovia, attached hereto as Exhibit "1." This letter was hand-delivered by Mr. Josey to the Wachovia office in Florence, SC, in front of Ms. Bedke. Yet, Ms. Bedke who now tells this Court that she was unaware of the referenced agreements at the hearing on the following day, June 27, 2008.

9. On June 27, 2008, Defendants Slaughter, Jones and Stukes each signed and submitted to the Court an Affidavit, which specifically set forth the terms, and attached a copy, of the subject Retention Bonus Agreements. Defendants Slaughter, Jones and Stukes

explained to the Court that they had already informed Wachovia that they stood ready to pay the balance in full as soon as Wachovia advised them of their the pay-off balances, and therefore the non-solicitation provision was moot and unenforceable. *See* Docket No 13. In addition, Defendants submitted a Brief to the Court at the June 27, 2008 hearing. This specific issue is addressed on *page 1* of that brief. *See* Docket No. 13.

10. When I received Wachovia's motion papers just two hours before the commencement of the hearing, I was pleased to see that Wachovia had not pled, and was not attempting to enforce the Retention Bonus Agreements, presumably because it acknowledged that the agreements were unenforceable due to Defendants' immediate offer to pay the balances, if not for a multitude of other reasons. It appeared to me that, for once in this case, Wachovia was going to refrain from making a frivolous argument. This was confirmed for me during the June 27, 2008 the hearing when counsel for Wachovia chose not to raise the Retention Bonus Agreements as a basis for relief.

11. For the following reasons, it was then, and is now, inconceivable to me that Wachovia "was unaware" that the Defendants had Retention Bonus Agreements. These agreements were offered by Wachovia to most, if not all, of the 6,500 former A.G. Edwards' financial advisors after Wachovia acquired A.G. Edwards. Further, Paduano & Weintraub, Wachovia's law firm in this case, handles many, many similar matters for Wachovia on a nationwide basis and could not possibly have been unaware of the well publicized and documented retention bonuses and accompanying agreements. In addition, Spang, who was obviously consulted and executed a sworn declaration before the filing of the suit, is a Complex manager responsible for managing financial advisors throughout nearly the entire state of South Carolina. Executives further up the chain at Wachovia and Wachovia's in-house counsel

obviously were also consulted prior to filing this lawsuit. Wachovia confirmed that such individuals were consulted during the Arbitration. It is inconceivable that Wachovia did not know that the Defendants had the exact same agreements as those entered into by the other 6,500 similarly situated financial advisors just months before this litigation was commenced.

12. Even if one were to accept the absurd premise that none of these people knew that Defendants (and 6,500 other financial advisors) had signed the Retention Bonus Agreements, there is no way I would know, or would reasonably believe, that was the case at the time of the June 27, 2008 hearing. To the contrary, I reasonably believed that Wachovia had done the right thing and had decided not to attempt to enforce a contract that was clearly inapplicable under the known facts and unenforceable.

13. Accordingly, I responded to Wachovia's oral argument by addressing the specific arguments contained in Wachovia's pleadings and raised during oral argument, which were clearly not based on non-solicitation contracts, but on contracts that contained no such clauses and on other theories.

14. I had no intent or reason to hide the existence of the Retention Bonus Agreements. In fact, Defendants made the existence of the Retention Bonus Agreements expressly known to both Wachovia and the Court. Defendants submitted their Affidavits and Brief, which addressed the issue in substance and included copies of the agreements. It was clear to Defendants that the non-solicitation clauses were moot. They never hid this position from the Court at any time.

15. Ms. Bedke specifically acknowledged that she read the Defendants' Affidavits during the hearing. *See* June 27, 2008 Hearing Transcript at 32:10-20 (Exhibit "**D**" to Reply Brief). After doing so, she acknowledged that Wachovia was not relying on any

agreement that specifically prohibited solicitation. *Id.* at 35:2-6. Tellingly, when asked by the Court why Defendants did not have such an agreement, she (truthfully) stated "we don't stop them from doing that." *Id.* at 36:11-14. This is a far cry from the current offer that Wachovia "was unaware" of the agreements.

16. The record reflects that Wachovia made a conscious decision not to enforce these agreements, presumably because it knew attempting to enforce them, in light of Defendants' immediate offers to repay their retention bonus, would be frivolous and unsuccessful.

17. If there was any doubt that Wachovia made a conscious decision not to attempt to baselessly rely on the Retention Bonus Agreements, that doubt is resolved by looking at Wachovia's conduct ever since June 27, 2008. Though surely on notice of the Retention Bonus Agreements after the hearing, Wachovia made no attempt to enforce them either in Court or in the Arbitration.

18. In fact, Wachovia filed an *Amended* Statement of Claim in the Arbitration on July 25, 2008, but chose not to plead a claim based on the Retention Bonus Agreements.

19. Further, 16 months after the Court hearing, on the last day of the Arbitration, Wachovia confirmed that it was not making any claims under the Retention Bonus Agreements. In the Memorandum of Law Regarding Attorneys Fees it submitted to the arbitration panel on November 24, 2009, Wachovia expressly stated that "Claimant [Wachovia] has made no claim under these [Retention Bonus Agreements] against Respondents and has sought no relief based on those Agreements." *See* Exhibit "2" attached hereto at p. 4. Clearly, Wachovia was concerned that the agreements have an attorneys' fee provision and that

Wachovia could be liable for attorneys' fees if it unsuccessfully sought to enforce the Retention Bonus Agreement.

20.    Wachovia's attack on my forthrightness with the Court was not only misguided, but inaccurate and unnecessary. The record clearly establishes that I, on behalf of the Defendants, did indeed raise the existence of Wachovia's own agreements with the Court and Wachovia's counsel. I responded during oral argument to those arguments offered by Wachovia to the Court. Wachovia cannot excuse its own conduct by attempting to distract the Court with further inaccuracies.

_____
Andrew J. Shapren

Sworn to before me this
9th day of February, 2010

_____
Notary Public

COMMONWEALTH OF PENNSYLVANIA
NOTARIAL SEAL
CHRIS E. METCALF, Notary Public
City of Philadelphia, Phila. County
My Commission Expires April 18, 2013

7

#2087957-v1;0072703/000012

# Exhibit "1"

# TURNER PADGET
TURNER PADGET GRAHAM & LANEY P.A.

CHARLESTON
COLUMBIA
FLORENCE
GREENVILLE
MYRTLE BEACH

**J. RENÉ JOSEY**

REPLY TO: Florence Office
E-mail: RJosey@turnerpadget.com
Writer's Direct Dial: (843) 656-4451
Writer's Direct Fax: (843) 413-5818

June 26, 2008

HAND-DELIVERED

Mr. Scott Spang
Wachovia Securities
1807-A W. Evans Street
Florence, SC

Dear Mr. Spang:

Please be advised that this firm represents Stephen Jones, George Stukes, and Sonny Slaughter, all former employees of your firm. In that regard, you should have no further direct contact with these individuals regarding their former employment with your firm except through counsel.

Because we understand that legal action has been threatened against these individuals, we would expect to receive any notice of such filings or related hearings. From our conversations with these individuals, we understand that they met with you this afternoon as well as two other individuals from Wachovia Securities' Columbia Office. Please provide us with the identity of these individuals. If your firm is represented by counsel, please advise us of the name of such counsel so that we may correspond appropriately.

Finally, each of these individuals stands prepared to repay the appropriate sums on their notes payable once an accounting has been presented for their individual service with your firm. By copy of this letter to branch manger Buddy Brand, I am making sure that the local office is informed of these matters as well.

Sincerely,

TURNER, PADGET, GRAHAM & LANEY, P.A.

J. René Josey

JRJ/rm

cc: Mr. Frank J. "Buddy" Brand, II

BUSINESS • LITIGATION • SOLUTIONS

BB&T Building • 4th Floor • 1831 West Evans Street (29501) • PO Box 5478 • Florence, SC 29502
Phone (843) 662-9008 • Fax (843) 667-0828 • turnerpadget.com

# Exhibit "2"

FINRA DISPUTE RESOLUTION
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X
In the Matter of the Arbitration between          :

WACHOVIA SECURITIES, LLC, as successor            :
in interest to A.G. EDWARDS & SONS, INC.,
                                                  :
            Claimant,          FINRA No. 08-01374
                                                  :
    -and-
                                                  :
FRANK J. BRAND, II, MARVIN SLAUGHTER,
STEPHEN N. JONES, GEORGE W. STUKES,               :
and STIFEL, NICOLAUS & COMPANY, INC.,
                                                  :
           Respondents.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

## CLAIMANT'S MEMORANDUM OF LAW
## REGARDING ATTORNEYS' FEES

PADUANO & WEINTRAUB LLP
1251 Avenue of the Americas
New York, New York 10020
(212) 785-9100

BALLARD & LITTLEFIELD LLP
3700 Buffalo Speedway, Suite 250
Houston, Texas 77098
(713) 403-6400

Counsel for Claimant

This Memorandum of Law is respectfully submitted by Claimant Wachovia Securities, LLC, as successor in interest to A.G. Edwards & Sons, Inc. ("Wachovia" or "Claimant"), in response to the *sua sponte* request of the Panel on October 22, 2009 regarding attorneys' fees.[1]  Under South Carolina law, the parties are not entitled to recover attorneys' fees.  South Carolina follows the "American Rule," whereby litigants are responsible for their own attorneys' fees, unless there exists a contract or an applicable statute that specifically provides for an award of attorney's fees.  Here, there is neither.

## ARGUMENT

### A. UNDER APPLICABLE LAW, RECOVERY OF ATTORNEYS' FEES IS NOT ALLOWED UNDER THE CIRCUMSTANCES OF THIS CASE.

The Arbitrator's Manual states that "[a]ttorneys' fees are frequently requested in arbitration.  Arbitrators have the authority to consider awarding attorneys' fees, but the procedure varies from state to state.  It is appropriate for the arbitrators to request the parties to brief this issue."  Under Rule 13212 of the FINRA Code of Arbitration, attorneys' fees may not be awarded if they are "prohibited by applicable law."  It is well settled that South Carolina follows the American Rule, which dictates that attorneys' fees may only be awarded when specifically provided for by statute or contract.  "The general rule is that attorney's fees are not recoverable unless authorized by contract or statute." Blumberg v. Nealco, Inc., 310 S.C. 492, 493, 427 S.E.2d 659, 660 (S.C. 1993)(Tab 1); see also Baxter v. Martin Bros., Inc., 368 S.C. 510, 514, 630 S.E.2d 42 (S.C. 2006)(Tab 2).  "Our Supreme Court has clearly defined the occasions

---

[1] Evidence in the parties' cases-in-chief closed on October 22, 2009 and neither party during the 38 hearing days adduced evidence regarding attorneys' fees or addressed any such claim in any way.  Neither party has prosecuted a claim for attorneys' fees.

when an award of counsel fees may be made. As a general rule, attorneys' fees are not recoverable unless authorized by contract or statute." Duke Power Co. v. South Carolina Public Service Commission, 284 S.C. 81, 100, 326 S.E.2d 395, 406 (S.C. 1985)(Tab 3); Clardy v. Bodolosky, 383 S.C. 418, 428-29. 679 S.E.2d 527, 532 (S.C. App. Ct. 2009)(Tab 4).

Further, pursuant to S.C. Code Ann. § 15-48-110 (Tab 5), attorneys' fees are specifically excluded from recovery in an arbitration award, absent express authorization for such in the arbitration agreement.

> Unless otherwise provided in the agreement to arbitrate, the arbitrators' expenses and fees, together with other expenses, not including counsel fees, incurred in the conduct of the arbitration, shall be paid as provided in the award.

Id. (emphasis added)

### B. THERE IS NO STATUTE ALLOWING THE RECOVERY OF ATTORNEYS' FEES IN THIS ARBITRATION

"In South Carolina, courts interpret statutes that grant the power to award attorney's fees narrowly because these laws were enacted in derogation of the common law. See Dowaliby v. Chambless, 344 S.C. 558, 562, 544 S.E.2d 646, 548 (Ct. App. 2001)('A statute allowing attorney fees is in derogation of the common law and must be strictly construed.')" Harris-Jenkins v. Nissan Car Mart, Inc., 348 S.C. 171, 177, 557 S.E.2d 708, 711 (S.C. App. Ct. 2001)(Tab 6); accord Steinert v. Lanter, 284 S.C. 65, 325 S.E.2d 532 (S.C. 1985)(holding statute allowing recovery of costs in derogation of common law and must be strictly construed to allow only recovery of costs and not attorney's fees)(Tab 7). Here, no party has asserted an entitlement to attorneys' fees based on any statute, and no statute has been cited to the Panel in support of such

2

relief.

If attorneys' fees are awarded with no statutory basis to support such an award, South Carolina courts will reverse a lower court's awarding of same. See, e.g., Dowaliby v. Chambless, 344 S.C. 558, 563, 544 S.E.2d 646, 648 (S.C. App. Ct. 2001)(reversing award of attorneys' fees because no statutory basis for awarding same)(Tab 8); First Union Nat'l Bank of South Carolina v. FCVS Communications, 328 S.C. 290, 494 S.E.2d 429 (S.C. 1997)(reversing award of attorney's fees because they were not authorized by contract or statute)(Tab 9); South Carolina Dep't of Soc. Sers. v. Tharp, 312 S.C. 243, 439 S.E.2d 854 (S.C. 1994)(holding it was error to award attorney's fees without statutory authority)(Tab 10).

The only reference to a pertinent statute is in Count I of the Counterclaim regarding supposed "overpayments" made by Messrs. Slaughter, Jones and Stukes, S.C. Code 1976 Section 41-10-80(C). However, the statute has no applicability for two reasons. First, the statue applies to "wages," not unpaid commissions of a sales representative. Lee v. Thermal Engineering Corp., 352 S.C. 81, 1572, S.E.2d 298, (S.C. App. 2002)(Tab 11). Second, the statute does not apply because it is indisputable that there is no underlying liability as to Wachovia. For his part, Mr. Slaughter admitted that he had received his "overpayment" of $453.80 from Wachovia upon his request (Slaughter Testimony, Feb. 3, 2009). Mr. Jones testified that he received and deposited a check from Wachovia for $1,654.99, but does not know what if any "overpayment" he made (Jones Testimony, Dec. 17, 2008). Mr. Stukes admits that the $297.91 overpaid by him as set forth in Respondent's Exhibit 1 was paid to him (Stukes Testimony, Dec. 11, 2008). No Respondent identified any alternative sum to which they believed they

3

were entitled, much less articulated a methodology as to calculations. By law, they were obligated to do that or their claim fails. See <u>Charleston Lumber Company, Inc. v. Miller Housing Corp.</u>, 318 S.C. 471, 482, 485 S.E.2d 431, 438 (S.C. App. Ct. 1996)("[A]dhering to the plain language of the statute, the Millers failed to prove the elements necessary to be awarded attorneys' fees.").

C. <u>THERE IS NO CONTRACT ALLOWING THE RECOVERY OF ATTORNEYS' FEES IN THIS ARBITRATION</u>

The only contracts here that refer to the recovery of attorneys' fees are the Individual Respondents' Retention Bonus Agreements with Wachovia. Paragraph 26 of the Investment Broker Agreements each of the Individual Respondents signed with Claimant provides:

> You agree that any controversy or dispute arising between you and Edwards in respect to this agreement or your employment by Edwards shall be submitted for arbitration before the New York Stock Exchange, Inc. or the National Association of Securities Dealers, Inc. [now FINRA].

(See C. Exs. 11, WF00026 (Stukes); 55, WF 00019 (Jones); 98, WF 00012 (Slaughter); and 154, WF 00006 (Brand)). Under those Agreements, the Individual Respondents "agree to pay all reasonable costs and expenses incurred by or on behalf of Wachovia in connection with its exercise of any or all of its rights and remedies under this Note, including, without limitation, reasonable attorneys' fees." (C. Exs. 18, WF 00406 (Stukes); 64, WF 00394 (Jones); 107, WF 00738 (Slaughter) and 155, WF 00249 (Brand)) Claimant has made no claim under these Agreements against Respondents and has sought no relief based on those Agreements.

Again, South Carolina courts will vacate an arbitration award where a panel's award "resolves an issue that is not arbitrable because it is outside the scope of

4

the arbitration agreement," which includes awarding attorneys' fees not contemplated by any arbitration agreement. Lybrand v. Merrill, Lynch, Pierce, Fenner & Smith, Inc., 321 S.C. 70, 73, 467 S.E.2d 745, 747 (S.C. App. Ct. 1996)(vacating an arbitration award of attorneys' fees, because the arbitration agreement did not expressly provide for such fees)(Tab 12).

> Lybrand argues the panel's award of attorney's fees was proper under a strained construction of the contractual provision mandating arbitration of "any controversy" arising between the parties. We disagree. Lybrand's claim for attorney's fees was part of her underlying action. If the panel awarded attorney's fees based on a construction of the term "any controversy" as including a separate controversy regarding attorney's fees, without any further legal or contractual basis for granting such an award, the panel resolved an issue outside the scope of the arbitration agreement.

Id., 321 S.C. at 74, 467 S. E. 2d 745.

### D. IN ORDER TO COMPLY WITH THE PANEL'S DIRECTIVE, CLAIMANT HAS SUBMITTED EVIDENCE OF ITS FEES TO THE PANEL *IN CAMERA*

On November 18, 2009, the Panel directed the parties to submit their unredacted attorneys' fees bills to the Panel and to exchange the total amount of the fees they have incurred with opposing counsel. Claimant is complying with the Panel's order, even though South Carolina law does not allow an award of attorneys' fees in the absence of a statute or contract.

### Conclusion

The Panel is empowered under South Carolina law to award the compensatory and punitive damages that Wachovia seeks here. However, for the foregoing reasons, namely that no applicable contract or statute makes provision for the recovery of attorneys' fees, South Carolina law does not allow attorneys' fees to be awarded in this arbitration to either party.

Dated: New York, New York
November 24, 2009

PADUANO & WEINTRAUB LLP

By: _____
1251 Avenue of the Americas
New York, New York 10020
(212) 785-9100

BALLARD & LITTLEFIELD LLP
3700 Buffalo Speedway, Suite 250
Houston, Texas 77098
(713) 403-6400

Counsel for Claimant