# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| WACHOVIA SECURITIES, LLC, a Delaware Corporation and successor in interest to A.G. EDWARDS & SONS, INC., <br><br> Plaintiff, <br><br> v. <br><br> FRANK J. BRAND, II, MARVIN SLAUGHTER, STEPHEN N. JONES, AND GEORGE W. STUKES, individuals, <br><br> Defendants. | CIVIL ACTION NO. 08-02349-TLW |

**PLAINTIFF WACHOVIA SECURITIES, LLC'S REPLY MEMORANDUM OF LAW
IN FURTHER SUPPORT OF
PLAINTIFF'S MOTION TO VACATE ARBITRATION AWARD AND IN
<u>OPPOSITION TO DEFENDANTS' MOTION TO CONFIRM  AWARD</u>**


Dated:  February 24, 2010

**ROBINSON, BRADSHAW & HINSON, P.A.
140 East Main Street, Suite 420
Rock Hill, South Carolina 29730
(803) 325-2900**

**MCANGUS GOUDELOCK & CURRIE, LLC
700 Gervais Street, Suite 300
Columbia, South Carolina  29211
(803) 779-2300**

**PADUANO & WEINTRAUB LLP
1251 Avenue of the Americas
Ninth Floor
New York, New York 10020
(212) 785-9100**

**Attorneys for Plaintiff
Wachovia Securities, LLC
n/k/a Wells Fargo Advisors, LLC**

# I.     INTRODUCTION

The arbitration panel in this case awarded over a million dollars in fees and expenses to Defendants—an award based principally on the South Carolina Frivolous Civil Proceedings Act (the "FCPA"). Yet Defendants' lengthy brief opposing Wachovia's motion to vacate the panel's award makes but a single, glancing reference to the actual text of that Act. Rather than addressing and analyzing the critical legal provisions of the FCPA that govern Wachovia's motion, Defendants have engaged in a full-throated disparagement of Wachovia and its counsel. Despite Defendants' attempt to blur the focus of Wachovia's motion with this attack, however, it is the FCPA on which that focus must remain. That Act provides that:

- The power to issue sanctions is given to a "court"—not to an arbitration panel. S.C. Code Ann. § 15-36-10(C)(1).

- "The court" is to proceed to consider whether a claim was frivolous (and thus, whether sanctions are warranted) *only* "[a]t the conclusion of a trial and after a verdict for or a verdict against damages has been rendered." *Id.*

- "A person is entitled to notice and an opportunity to respond before the imposition of sanctions." S.C. Code Ann. § 15-36-10(D).

- "A court or party proposing a sanction . . . shall notify the court and all parties of the conduct constituting a violation . . . and explain the basis for the potential sanction imposed." *Id.*

- "Upon [such] notification . . . the party who allegedly violated [the FCPA] has thirty days to respond to the allegations as that person considers appropriate including, but not limited to, by filing a motion to withdraw the pleading, motion, document or argument or by offering an explanation of mitigation." *Id.*

Defendants do not—because they cannot—deny that these provisions of the FCPA are plain, clear and unambiguous. Nor do they deny that the arbitration panel ignored each and every one of them. Instead, they breezily dismiss Wachovia's objections to these serial injustices as "exceedingly legalistic arguments," *Def. Brief,* at p. 3, and claim that the full, fair

and *independent* hearing guaranteed by the FCPA would have been merely "duplicative" and "cumulative" in this case. The South Carolina General Assembly would doubtless be surprised to discover that the thorough, bifurcated procedure that it had carefully crafted to constrain the potent sanctions available under the FCPA had been so lightly cast aside.

By attempting to exercise an authority not available to it under the FCPA, the arbitrators "exceed[ed] their powers" under subsection 10(a)(4) of the Federal Arbitration Act (the "FAA"). By denying Wachovia the separate notice and hearing that is the centerpiece of the FCPA, the panel "refus[ed] to hear evidence pertinent and material to the controversy" under subsection 10(a)(3) of the FAA. Each of these transgressions constitutes a separate and independent basis for vacating the panel's fee award.

\* \* \* \* \*

Ignoring the procedural requirements of Rule 11 (which apply to a party seeking sanctions in federal court), Defendants have persisted in their attempt to "hold Wachovia accountable" for the arbitration panel's suggestion that Wachovia representatives "may" have made certain unspecified misrepresentations at the TRO hearing held before this Court in June 2008. The alleged misrepresentations on which Defendants base their request for "accountability," however, were not ascribed to Wachovia by the panel. Moreover, and more fundamentally, Defendant's charges that Wachovia committed actionable misrepresentations are baseless. Accordingly, Defendants' informal request to "hold Wachovia accountable" should be denied.

## II.     ARGUMENT

### A.     The arbitrators exceeded their powers by claiming for themselves an authority that South Carolina's FCPA reserves for the courts alone.

Defendants contend that "[t]here can be no serious dispute over whether FINRA arbitration panels have the power to award attorneys' fees." *Def. Brief*, at pp. 14-15. This declaration misses the point. The question here is not whether a FINRA panel has *any* authority to award fees. Wachovia acknowledges that such general authority exists under, for example, Rule 13212 of FINRA's Code of Arbitration Procedure (attached to this Memorandum as Exhibit A), which gives a FINRA panel the authority to award attorneys' fees as a sanction for improper conduct. The arbitrators here, however, *declined* to award sanctions to Defendants under FINRA rules, even though they were asked to do so. *See Wachovia Motion To Vacate* Ex. A, at pp. 5-6 (awarding fees under FCPA and Wage Act but rejecting all other claims of parties not expressly granted); *Paduano Aff.*, Ex. A, at p. 4 (Defendants' brief to arbitration panel asking for attorneys' fees as a sanction under FINRA rules).[1] Instead, they awarded fees based on the FCPA—which does not apply to arbitration panels. In so doing, the panel exceeded its powers under § 10(a)(4) of the FAA.

The situation here is markedly similar to that presented in *Riko Enterprises, Inc. v. Seattle Supersonics Corp.,* 357 F. Supp. 521 (S.D.N.Y. 1973). In that case, Philadelphia's NBA franchise filed a motion under the FAA to confirm an arbitration award made by the NBA's Commissioner against the Seattle Supersonics. The Supersonics cross-moved to vacate the award, arguing that the Commissioner had exceeded his authority by attempting to exercise power granted only to the NBA's Board of Governors. The Court agreed. Noting

---

[1]     Throughout this Memorandum, cites to the "Paduano Aff." and "Bedke Aff." refer to the Declarations of Anthony Paduano and Kathryn Bedke filed by Wachovia on January 15, 2010. Cites to the "Paduano Reply Aff." and "Bedke Reply Aff." refer to the Reply Affidavits of Mr. Paduano and Ms. Bedke filed as Exhibits B and C (respectively) to this Memorandum.

that the Commissioner "may not usurp those powers reserved to the Board," it granted Seattle's motion to vacate. 357 F.Supp. at 525.

Here, too, an arbitrating authority has attempted to "usurp" powers granted exclusively to another authority, for the FCPA grants the power to issue sanctions exclusively to a "court." S.C. Code Ann. § 15-36-10(C)(1). Defendants do not take issue with this plain and unambiguous language, which appears in a statute enacted in derogation of the common law that must be strictly construed. Nor do they challenge the South Carolina Court of Appeals' declaration that the "fundamental objective" of the FCPA is "deterring egregious misuses of the court system." *Father v. S.C. Dept. of Social Svcs.,* 345 S.C. 57, 67, 545 S.E.2d 523, 528 (Ct. App. 2001). Instead, Defendants resort to hyperbole, claiming that "if the FCPA does not apply, it gives parties free reign to file abusive claims in the arbitral forum." *Def. Brief,* at p. 18.

This conclusion is almost desperately disingenuous. The FCPA doesn't give a party "free reign" to do *anything* in the arbitral forum; in fact, it isn't concerned with that forum at all. Instead, as the *Father* court noted, the FCPA is concerned with the integrity of "the court system." But, contrary to Defendants' overwrought suggestion, parties to a FINRA arbitration are not rendered helpless by an inability to resort to the FCPA. As noted above, the FINRA rules themselves give an arbitration panel power to award attorneys' fees as sanctions in appropriate circumstances. The arbitrators here did not invoke those rules, however, but attempted to exercise a power that was entirely unavailable to them. Thus, their sanctions award must be vacated. *See Certain Underwriters at Lloyd's v. Argonaut Ins. Co.,* 264 F. Supp. 2d 926, 945 (N.D. Cal. 2003) (vacating sanctions award imposed by arbitration panel because neither the FAA nor the parties' arbitration agreement authorized such

sanctions); *Stratton Oakmont, Inc. v. Nicholson,* 868 F. Supp. 486, 488 (E.D.N.Y. 1994) (vacating arbitration award because arbitrators had exceeded their authority by attempting to award punitive damages under New York law, which did not allow for such damages).

Even though this Court need not look beyond the plain language of the FCPA to vacate the panel's sanctions award, it is worth noting that sound public policy supports the reservation of the FCPA's sanctioning power to judicial authorities. The FCPA prescribes a detailed and comprehensive protocol for courts to follow when considering whether to assess sanctions, a protocol that includes extensive procedural guarantees and requires the court to make numerous findings. *See* S.C. Code Ann. § 15-36-10. By contrast, as Defendants themselves have conceded, "[a]rbitration does not provide the procedural protections offered by the judicial system, nor does it provide the assurance of the proper application of substantive law offered by the judicial system." *Def. Brief,* at p. 24. The panel's wholesale disregard of the FCPA's safeguards regrettably confirms this observation.

Not only did the arbitrators' attempt to award sanctions under the FCPA exceed the *legal* authority granted to them by South Carolina's FCPA, it exceeded the *contractual* authority granted to them by the parties' arbitration agreement. The Uniform Submission Agreements signed by the parties (and attached as Exhibit B to Defendants' Motion To Confirm Arbitration Award) provided that the parties were submitting to FINRA "the present matter in controversy, as set forth in the attached statement of claim, answers and all related counterclaims," all "in accordance with [FINRA's] Constitution, By-Laws, Rules, Regulations, and/or Code of Arbitration Procedure[.]" Respondents' counterclaim sought attorneys' fees based *only* on the S.C. Wage Payment Act. *See Paduano Aff.,* Ex. D, at p. 39. Respondents made no attempt to amend their claims, under FINRA rules, to add a claim for

fees or sanctions under the FCPA; rather, they simply demanded such relief on the last day of the arbitration hearing. *Paduano Reply Aff.,* at ¶ 3. Accordingly, the only attorneys' fee issue properly before the arbitrators—under the parties' Submission Agreement and applicable FINRA rules—was a "prevailing party" award under the Wage Payment Act. *See Totem Marine Tug & Barge v. North American Towing, Inc.,* 607 F.2d 649, 651 (5th Cir. 1979) (vacating award because arbitrators had exceeded their authority by deciding issue not properly submitted to arbitration panel).

### B.  Even if it had authority to enforce South Carolina's FCPA, the arbitration panel denied Wachovia a full and fair hearing on the question of whether to award sanctions under the Act.

As Wachovia noted in its initial brief, a court may vacate an arbitration award under § 10(a)(3) of the FAA if the arbitration panel "deprives a party to the proceeding of a fundamentally fair hearing." *Three S Delaware, Inc. v. DataQuick Info Sys., Inc.,* 492 F.3d 520, 531 (4th Cir. 2007). "A fundamentally fair hearing requires the procedural steps of notice, an opportunity to be heard, the opportunity to present evidence which is relevant and material, and arbitrators who are not infected with bias." *Bowles Financial Group, Inc. v. Stifel, Nicholas & Co., Inc.,* 22 F.3d 1010, 1013 (10th Cir. 1994).

Defendants suggest that Wachovia was provided with a full and fair hearing because, among other things, the panel heard testimony in 65 hearing sessions over 39 days. *Def. Brief,* at p. 1. Once again, Defendants have missed the point. Those 65 hearing sessions concerned the merits of the parties' underlying claims and defenses (e.g., Wachovia's several claims against Defendants and Defendants' counterclaims under the Wage Payment Act). South Carolina's FCPA, however, requires a *separate* hearing, *after* the parties' underlying claims have been adjudicated and a verdict rendered, to determine whether sanctions should

be awarded.  *See* S.C. Code Ann. § 15-36-10(C)(1).  The party against whom sanctions are sought is entitled to *special* notice of its allegedly sanctionable conduct, and it has 30 days to respond to that notice.  *Id.,* at 15-36-10(D).  This bifurcated hearing process is not a mere technicality.  Instead, it ensures that a court's consideration of sanctions will be thoroughly impartial and objective, and will not become intertwined with, or unduly influenced by, the court's consideration of the merits of the parties' underlying claims.

Defendants do not even pretend that Wachovia received the *separate* opportunity to be heard (and 30-day response period) guaranteed by South Carolina's FCPA.  They raised the FCPA for the very first time on the last day of the arbitration hearing.  The panel issued its award a mere 24 days later—without giving Wachovia an independent opportunity to be heard on the FCPA issue.  Faced with this clear and uncontroverted failure of the panel to give Wachovia the hearing mandated by the FCPA, Defendants brand such a hearing as unnecessarily "duplicative" and "cumulative."  *Def. Brief,* at p. 24.  As noted above, however, a separate hearing on sanctions is an essential part of the FCPA's regulatory protocol.  It ensures that a party has a thorough opportunity to marshal evidence and defend itself before facing the statute's range of powerful punitive measures.  Absent a statutorily-guaranteed hearing, a party like Wachovia can fall victim to just the sort of injustice that occurred here— a sanctions "ambush" in which virtually all of the guarantees of the FCPA were summarily discarded and over a million dollars in fees imposed.

Defendants also contend that the FCPA's separate hearing was unnecessary because Wachovia "never once requested any further hearings and rejected the panel's invitation to submit further briefing [on the FCPA]."  *Def. Brief,* at p. 22.  This contention is simply wrong.  After Wachovia had delivered its closing argument, the arbitration panel asked

8

whether Wachovia had "been given a fair opportunity to present your case in its entirety in its proceedings." *Paduano Aff.*, Ex. B, at p. 253. Wachovia's counsel specifically noted that he had *not* been given such an opportunity as to "the issues raised and argued as to attorneys' fees." *Id.*, at pp. 253-54. He went on to request that, "to the extent you're going to consider any aspect of the award, *I would ask we be heard.*" *Id.*, at p. 254. When the chairman of the panel asked whether "a briefing would cure that," *id.*, Wachovia's counsel responded:

> I don't know. Because the standard and the statute from what I saw, there's notice and an opportunity to be heard. So that means in other words, we need some evidence. That's why I don't think it's appropriate at the end, after our record is closed, that new issues have been injected. This statute is not referred to in the pleadings. So it's not just the element of surprise. It's a complete surprise.

*Id.*, at 255. This passage was not, as Defendants contend, a rejection to submit further briefing. *Def. Brief*, at pp. 22-23. What Wachovia's counsel was explaining is that Defendants' sudden, last-minute request for fees under a statute that had never before been mentioned was so fundamentally egregious that a briefing could not cure it. Instead, the panel should reject the request out of hand.

Ultimately, the chairman of the arbitration panel seemed to assure Wachovia that it would given a further opportunity to be heard on attorneys' fees, noting:

> The issue on attorneys' fees, I'm sure there will be something that will occur to the panel where we will need to seek clarification from the parties. And if that becomes necessary, be assured we will be in touch with you.

*Id.*, at p. 263. The panel did later ask the parties to submit information concerning the fees that they had incurred in November 2009, but it did not give Wachovia any notice (as the FCPA requires) that it was considering sanctions under the FCPA. Nor it did provide Wachovia with the statutorily-prescribed 30-day response period. *Paduano Aff.*, at ¶ 4 n.1.

Defendants blame Wachovia for not unilaterally submitting a "separate submission" to the panel setting forth its defenses under the FCPA. *Def. Brief,* at p. 22. The panel did not request such a submission, however, and Wachovia cannot be faulted for taking the panel at its word that it would "be in touch" with the parties if any "clarification" regarding attorneys' fees issues was necessary. Moreover, Wachovia had not been provided with the *special* notice describing in detail its potentially sanctionable conduct and the basis for any sanctions—a notice expressly required by the FCPA. Thus, any "separate submission" by Wachovia would have been an exercise in shadowboxing—an attempt by Wachovia to grapple with sanctions issues that had not properly been raised and about which Wachovia would have been forced to guess.

In short, Defendants seek to compound the injustice of their last minute "FCPA ambush" by faulting Wachovia for reasonably expecting that it would be afforded the numerous procedural protections of the Act. Evidently, Defendants believe that Wachovia's counsel should have: (i) thoroughly analyzed the FCPA and delivered a comprehensive anticipatory summary of all available defenses to it during the November 24, 2009 hearing session, while simultaneously listening to Defendants' closing arguments and delivering their own on the merits of the parties' claims; (ii) on the spot, during the same hearing session, divined all of the allegations that Defendants might have been asserted in support of a claim for sanctions (a burden that the FCPA squarely places on *Defendants,* as the party requesting sanctions) and immediately delivered a comprehensive response to those allegations; (iii) presumed that the panel would completely ignore the numerous procedural protections of the FCPA and, as a safeguard against such injustice, submitted a supplemental, post-hearing brief on the FCPA that the panel had neither requested nor authorized.

The silliness of this position is self-evident. Wachovia objected to Defendants' last-minute invocation of the FCPA, told the panel that it had *not* had a full and fair opportunity to be heard on the issue of attorneys' fees, asked to be heard further if the panel was inclined to consider the issue, and was assured by the panel that it would "be in touch" if further clarification were needed. The panel's subsequent failure to afford Wachovia *any hearing at all* on a potential sanctions award under the FCPA—let alone "a fundamentally fair hearing"—justifies the vacation of that award under § 10(a)(3) of the FAA.

**C.    *The panel's "manifest disregard" of the numerous statutory protections of the FCPA constitutes another basis for vacating the panel's award.***

To be sure, the Fourth Circuit has long adhered to a standard that requires a party seeking to vacate an arbitration award because of a "manifest disregard of the law" to show that the arbitrators were "aware of the law, understood it correctly, found it applicable to the case before them, and yet chose to ignore it." *See, e.g., Remmey v. Painewebber, Inc.,* 32 F.3d 143, 149 (4th Cir. 1994). Wachovia acknowledged this standard in its initial brief, and Defendants cite it repeatedly. *E.g., Def. Brief,* at pp. 5, 15, 19, 23, 25.

It is important to recognize, however, that the Fourth Circuit created the "manifest disregard" standard as a common law ground for vacating an arbitration award that was *independent* of the four statutory grounds enumerated in 9 U.S.C. § 10. *See Patten v. Signator Ins. Agency, Inc.,* 441 F.3d 230, 234 (4th Cir. 2006) (explaining that a court may vacate an arbitration award "upon a showing of one of the grounds specified in the Federal Arbitration Act, *see* 9 U.S.C. § 10(a), *or* upon a showing of certain limited common law grounds," which common law grounds include a showing of manifest disregard of the law) (emphasis added). Indeed, the standard seems to have been crafted to vacate an arbitrator's egregious misinterpretation of the law—in the absence of any clear textual authority in the

11

FAA that would otherwise give a court that power. *See Upshur Coals Corp. v. United Mine Workers,* 933 F.2d 225, 229 (4th Cir. 1991) ("A legal interpretation of an arbitrator may only be overturned where it is in manifest disregard of the law.").

As Wachovia explained in its initial brief, the United States Supreme Court has recently made it clear that the "manifest disregard" standard does *not* exist independently of the four statutory grounds of 9 U.S.C. § 10. *See Hall Street Assoc. v. Mattel, Inc.,* 128 S. Ct. 1396, 1404 (2008). The *Hall Street* decision suggests that the standard—to the extent it still exists—is merely a shorthand for the statutory grounds for vacation set forth in 9 U.S.C. § 10. If that is the case, then, this Court should not require Wachovia to satisfy the formulation of the "manifest disregard" standard set forth in *Remmey* and other cases, but should instead look simply to the plain language of 9 U.S.C. § 10(a)(3) and § 10(a)(4) when deciding whether to vacate the panel's fee award. Thus, if the Court finds that an arbitration panel has no power to award sanctions under South Carolina's FCPA, it should vacate the panel's award under § 10(a)(4) without requiring any further showing that the panel was "aware of the law, understood it correctly, found it applicable to the case before them, and yet chose to ignore it." Likewise, if the Court finds that the panel denied Wachovia a "fundamentally fair hearing," it should vacate the panel's award under § 10(a)(3) without any further showing.[2]

In any event, even if this Court decides that Wachovia must still satisfy *Remmey*'s "manifest disregard" standard to secure relief under § 10(a)(3) or § 10(a)(4), Wachovia has discharged that burden. Defendants attached a complete copy of the FCPA to their attorneys'

---

[2]    This approach is entirely consistent with the reasons behind the creation of the "manifest disregard" standard. There is a fundamental distinction between (i) a contention that an arbitration panel lacked jurisdiction to render a particular form of relief or denied a party a fair hearing; and (ii) a contention that the arbitrator had jurisdiction to grant that relief and had granted a fair hearing, but egregiously misinterpreted the law. The latter contention requires the high threshold of the *Remmey* standard to prevent losing parties from challenging every legal error allegedly made by an arbitrator. But in cases in which an arbitration panel has committed the more fundamental errors of acting beyond its jurisdictional or contractual authority or holding a fair hearing in the first instance, there is no need to hold a party seeking vacation to the higher standard set forth in *Remmey.*

fees brief and submitted the brief to the arbitration panel. Wachovia's counsel, upon reading the brief, advised the panel that "the statute" required notice and an opportunity to be heard.[3] Clearly, then, the panel was put on notice of the FCPA's statutory mandates, yet chose not to heed them. Such cavalier disregard of plain and unambiguous statutory language constitutes a "manifest disregard of the law"—under any formulation of the standard. *See Patten, supra,* 441 F.3d 230 at 235 (vacating award because arbitrator had "disregarded the plain and unambiguous language of the governing arbitration agreement when he concluded that it included an implied one-year limitations period."); *Kashner Davidson Securities Corp. v. Mscisz,* 531 F. 3d 68, 79 (1st Cir. 2008) (vacating as manifestly disregarding the law an arbitration award that had willfully disregarded an unambiguous procedural NASD rule); *New York Tele. Co. v. Comm. Workers of Am. Local 1100,* 256 F. 3d 89, 92-93 (2d Cir. 2001) (affirming order vacating a portion of an arbitration award, finding that it was manifest disregard for arbitrator to order payments which were illegal under relevant statutory provisions and Circuit precedent); *Edstrom Industries, Inc. v. Companion Life Ins. Co.,* 516 F. 3d 546, 553 (7th Cir. 2008) (vacating an arbitration award for manifest disregard where the arbitrator failed to apply and ignored the governing insurance law state statute).

       Few—if any—arbitrators are shameless enough to declare on the record that they are fully aware of the governing law, understand it correctly, yet choose to follow their own personal dictates of right and wrong. Rather, like many judicial findings, "manifest disregard" has to be inferred from the facts and circumstances. As *Patten* teaches, a court may safely conclude that an arbitrator has "manifestly disregarded the law" when he has

---

[3]      To be sure, Wachovia's counsel did not cite the FCPA by name—a fact to which Defendants devote much attention. But the FCPA was the only statute cited in Defendants' attorneys' fees brief that expressly required a separate notice and an opportunity to be heard. Defendants' suggestion that there was any doubt about the statute to which Wachovia's counsel was referring is simply not credible.

failed to heed "plain and unambiguous" language governing the parties' dispute. Because the panel here was presented with the plain and unambiguous language of the FCPA, yet chose not to follow it, the only reasonable conclusion is that the panel manifestly disregarded it.

> **D.**   ***Vacation of the panel's sanctions award requires vacation of the panel's entire fee award, because any fees attributable to the Wage Payment Act were incidental and, in any event, were not allocated by the panel as required by South Carolina law.***

The Panel justified its fee award of $1.1 million to Defendants under the FCPA (which, as noted, permits an award of attorneys' fees as sanctions) and the S.C. Wage Payment Act (the "Wage Act"), which allows a prevailing party in a wage dispute to recover his attorneys' fees. Defendants have not challenged Wachovia's evidence that the amount of time spent by the parties on Defendants' wage act counterclaims was negligible—consuming only an hour or so of 63 testimonial hearing sessions. Indeed, Defendants' own counsel has concurred that Defendants attorneys' fees were incurred "principally defending" against Wachovia's own claims—not in prosecuting Defendants' Wage Act counterclaims. Thus, the overwhelming portion of the panel's total fee award of $1.1 million must be attributed to the panel's improper sanctions award under the FCPA.

Wachovia vigorously disputes Defendants' suggestion that it objected to procedures that would have allowed it to determine the reasonableness of the attorneys' fees sought by Defendants  *See Bedke Reply Aff.,* at ¶¶ 7-8. What is *undisputed*, however, is that the panel did not allocate its fee award between the FCPA sanctions award and the Wage Act "prevailing party" award—as required by South Carolina law. *See Wachovia Init. Brief,* at pp. 20-21. Vacation of the FCPA award, then, causes the remaining Wage Act award to fail for lack of any evidentiary support.

14

### E.     Wachovia should not be "held accountable" for the arbitration panel's vague and unspecified suggestions of potential misrepresentations.

Defendants have filed an entirely separate Reply Brief in which they have requested that this Court "hold Wachovia accountable for misrepresentations" alleged in the panel's arbitration award and allegedly made by Wachovia at the TRO hearing held before this Court on June 27, 2008. *Def. Reply Brief,* at p. 3. Once again, Defendants are remarkably cavalier in pursuing sanctions. Like the South Carolina General Assembly, which has circumscribed the state courts' sanctioning power in the FCPA, the federal judiciary does not permit its sanctioning power to be lightly invoked. A party requesting sanctions must make a motion "*separately from any other motion* and must describe the specific conduct that allegedly violates Rule 11(b)." Fed. R. Civ. P. 11(c)(2) (emphasis added). Defendants apparently consider this Rule a "technicality" as well. The Court held its TRO hearing in this matter almost 20 months ago, yet Defendants have *never* made a motion under Rule 11 seeking sanctions against Wachovia.

Instead of complying with Rule 11, Defendants seek to "piggyback" off the arbitration panel's vague and unspecified references to potential "misrepresentations" by Wachovia. Those opaque references could never pass muster under Fed. R. Civ. P. 11(c)(2). Knowing that, Defendants are quick to tell this Court what the panel "really meant." They suggest that the unidentified potential misrepresentations alluded to in the panel's award must have included (i) "flagrant misrepresentations regarding the confidentiality of information at issue," *Def. Reply Brief,* at pp. 3-8; (ii) "flagrant misrepresentations regarding who owns the client relationship," *id.,* at pp. 8-10; and (iii) "flagrant misrepresentations set forth in the declarations of Spang and Hahn," *id.,* at p. 10-13.

The obvious flaw in this analysis, of course, is that the panel's award *does not refer to any such misrepresentations*. Here is the panel's complete, verbatim description of the representations for which the Defendants are asking Wachovia to be "held accountable":

> 1) The sworn Declarations of ***certain individuals*** that were filed in support of [Wachovia's] Motion for the Temporary Restraining Order obtained in this matter on July 11, 2008 ***may contain*** materially false representations of fact;
>
> 2) [Wachovia's] counsel's representations to the Court as to what was contained in the video tape upon which the July 11, 2008 Temporary Restraining Order was predicated ***may not be consistent*** with what is actually shown on the videotape; [and]
>
> 3) The video tape does not support the allegations made by Claimant in Court[.]

*Wachovia Motion To Vacate,* Ex. A, at p. 5 (emphasis added). The panel made no mention of any alleged misrepresentations concerning "confidentiality" or "ownership of the client relationship"—issues to which the Defendants devote so much attention in their Reply Brief. Indeed, the panel did not even identify the "certain individuals" who "may" have included misrepresentations in their Declarations. The only specific misrepresentations even suggested (in paragraph 3 above) were allegations made by Wachovia concerning "[t]he video tape" (actually, a DVD) submitted in support of its Motion for Temporary Restraining Order. Wachovia fully addressed those allegations in its initial brief, explaining that the single inaccuracy that its counsel made at the TRO hearing concerning the DVD was immaterial in light of other, undisputed evidence that certain of the Defendants took to their new employer nonpublic client information. *See Wachovia Init. Brief,* at pp. 24-25.

During his closing argument at the arbitration, Defendants' counsel strenuously argued that Wachovia had made misrepresentations at the TRO hearing concerning its true corporate position regarding confidentiality of client information and that Spang and Hahn had made

16

specific misrepresentations in their Declarations. *See Paduano Reply Aff.,* at ¶ 4; Ex. A. The panel, however, declined counsel's request to advise this Court of such alleged deception. Eager to launch a second effort to accuse Wachovia of misrepresentations (but, it seems, unwilling to go so far as to file a proper motion under Rule 11), Defendants are now attempting to use the vagueness of the panel's arbitration award to their benefit. Remarkably, they contend that the panel's refusal to accept their invitation to accuse Wachovia of specific misrepresentations means that the panel ***really believed that such misrepresentations had been made.*** This strategy is almost surreally disingenuous, but it is not supported by any part of the panel's arbitration award.

In light of the statements actually made by Wachovia's representatives in this matter (summarized accurately below), it is no surprise that the panel declined Defendants' counsel's invitation to advise this Court that Wachovia had committed sanctionable deception.

### 1.    *Wachovia's position regarding confidentiality of client information.*

No less an authority than the Securities and Exchange Commission considers such basic information as the name, address and telephone number of a brokerage client to be "nonpublic information" that a brokerage firm is to maintain as confidential. *See In re NEXT Financial Group, Inc.,* Release No. 349, 93 S.E.C. Doc 1369, 2008 WL 2444775, at *5 (June 18, 2008).[4]  To be sure, Wachovia and a number of other brokerage firms have agreed that financial advisors may take such basic information with them when they move from one firm to another, under certain carefully defined circumstances. Kathryn Bedke, Wachovia's counsel, confirmed at the TRO hearing before this Court that that was Wachovia's corporate position, i.e., that a financial advisor coming to work for Wachovia could retain basic client

---

[4]        A copy of the SEC's *NEXT* decision is attached as Exhibit D to this Memorandum.

information, but "they would then have to completely comply with the protocol." *Trans. of June 27, 2008 TRO Hrg.,* at p. 72, lines 17-18.

Here, the Defendants did *not* comply with the Protocol on Broker Recruiting in the manner in which they left Wachovia. Far from simply taking "basic client information" such as names, addresses, telephone numbers, and account titles, Defendants took *16* additional categories of nonpublic client information not permitted by the Protocol. *Paduano Reply Aff.,* at ¶¶ 7-8; Exs. C and D; *Bedke Aff.,* ¶ 14, Ex. A. Having violated the Protocol (to which their new employer was not even a signatory), Defendants could not claim the benefit of the Protocol when seeking to retain basic client information.

### 2.    *Wachovia's position regarding ownership of client relationship.*

Defendants next contend that Wachovia falsely represented at the TRO hearing that the brokerage clients served by Defendants were "Wachovia's clients." Defendants claim that Wachovia had made it clear—in other communications and evidence submitted at the arbitration hearing—that the clients "belonged" to Defendants, not to Wachovia. *See Def. Reply Brief,* at pp. 8-10.

Defendants have grossly mischaracterized the testimony at the arbitration hearing. As the arbitration testimony of Wachovia representative Elmer Walker made clear, Wachovia did (and does) believe that its financial advisors have a unique relationship with their clients. But as Mr. Walker cautioned:

> I believe that even if a financial advisor leaves the firm, a firm has a fiduciary obligation to the client to ensure normally through redistributing the accounts to existing financial advisors to make sure that that client's financial needs continue to be met, and from a fiduciary standpoint, we . . . don't relinquish our responsibility to continue to provide the client with objective advice, products and services and the like simply because an FA left.

*Paduano Reply Aff.,* Ex. F, at pp. 106. Mr. Walker also explained that the statements of Wachovia pointed to by Defendants in their Reply Brief were not intended to mean that "the firm doesn't have any responsibility for what you do with the client. It was never a qualifying statement of: You own the client." *Id.,* at pp. 296-97. Rather, Wachovia believes that, consistent with well-established regulatory protocols and norms of fiduciary responsibility, clients of its financial advisors are clients of the firm as well. Wachovia's duties to its clients are especially pronounced when, as here, a departing financial advisor leaves Wachovia with a range of nonpublic client information that industry protocol does not permit to be transferred.

> ### 3.     *The Spang and Hahn Declarations.*

Defendants contend that Messrs. Spang and Hahn made two general types of misrepresentations: (i) misstatements concerning Wachovia's position on confidentiality and "client ownership" and (ii) misstatements concerning Defendants' misappropriation of Wachovia's nonpublic information. Wachovia has already explained its position regarding the former representations. Messrs. Spang and Hahn clearly distinguished—in their respective Declarations—between facts based on their personal knowledge and facts based "upon information and belief." *See, e.g., Spang Dec.,* at ¶¶ 46, 47 and 52; *Hahn Dec.,* at ¶¶ 4, 7. That distinction fairly indicated that Spang's and Hahn's conclusions that Defendants had acted unlawfully were based on inferences founded on their direct observations.

More to the point, however, ***Spang and Hahn were correct.*** The spreadsheets that Defendants Stukes, Jones and Slaughter compiled when they left Wachovia clearly contained numerous categories of client identifying information beyond the "names, addresses, telephone numbers and account titles" permitted by the Protocol. *See Paduano Reply Aff.,* Ex.

19

C.  Indeed, Stifel's own executive admitted at the arbitration that certain information on the thumb drives taken by Defendants exceeded the scope of the Protocol.  *Id.,* Ex. E.  And Defendant Slaughter admitted at the arbitration that he had removed from Wachovia a thumb drive and handwritten notes containing nonpublic client information not covered by the Protocol.  *See Bedke Aff.,* at ¶ 14; Ex. A.  In the end, then, Defendants' allegations amount to the baffling charge that Spang and Hahn included, "upon information and belief," statements in their affidavits that were, in fact, well-founded.

Likewise, there can be no dispute that Spang and Hahn had reliable information indicating that Defendants were setting up an office for Stifel in Florence.  As Mr. Spang indicated in his Declaration, he had directory information from the Yellow Pages indicating Stifel's new address in Florence, and  Defendants Jones and Slaughter were observed making visits to this new address.  *See Spang Dec.,* at ¶ 46, Ex. J; *Hahn Dec.*, at ¶¶ 6-7.

Within the page limit allotted to it, Wachovia cannot respond to each and every detail of Defendants' shotgun blast of hyperbolic allegations.  But Wachovia is well-prepared to defend its representations to the Court at any opportunity.  Once again, however, Wachovia must insist that the Defendants follow the procedure articulated by Rule 11 if they intend to seek sanctions, rather than rest on the vague and unspecified suggestions in the arbitration panel's award.[5]

## IV.     CONCLUSION

For the foregoing reasons, Wachovia respectfully requests that this Court enter its Order vacating the arbitration panel's award of attorneys' fees and expenses to Defendants.

---

[5]      In yet another unfounded request for sanctions, Defendants seek their attorneys' fees incurred in responding to Wachovia's Motion To Vacate pursuant to 28 U.S.C. § 1927.  The best response to this request is the strength of Wachovia's arguments against the panel's fee award, which arguments speak for themselves.

ROBINSON, BRADSHAW & HINSON, P.A.

/s/ Stephen M. Cox
Stephen M. Cox
Fed. I.D. No. 6913
Benjamin A. Johnson
Fed. I.D. No. 2186

ROBINSON BRADSHAW & HINSON, P.A.
140 East Main Street, Suite 420
Rock Hill, South Carolina 29730
(803) 325-2900

MCANGUS GOUDELOCK & CURRIE, LLC
700 Gervais Street, Suite 300
Columbia, South Carolina  29211
(803) 779-2300

PADUANO & WEINTRAUB LLP
1251 Avenue of the Americas
Ninth Floor
New York, New York 10020
(212) 785-9100